Filed 3/23/22  P. v. Schowachert CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOHN-PAUL FRANK SCHOWACHERT,<br><br>    Defendant and Appellant. | F080101<br><br>(Super. Ct. No. CRF52202)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, Kari Mueller, Amanda D. Cary, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On July 19, 2019, a jury convicted defendant John-Paul Frank Schowachert of the attempted murder of Shane M.[1] (Pen. Code,[2] §§ 187, subd. (a), 664; count 1) and assault of Shane with a deadly weapon (§ 245, subd. (a)(1); count 2).  As to count 1, the jury found defendant committed the offense willfully, deliberately, and with premeditation (§ 189, subd. (a)) and that defendant personally used a knife in the commission of the offense (§ 12022, subd. (b)(1)).  As to both counts, the jury found defendant personally inflicted great bodily injury upon Shane (§ 12022.7, subd. (a)).  Defendant was sentenced to an aggregate term of 11 years to life.

On appeal, defendant contends:  (1) trial counsel's failure to object to evidence regarding his prior prison history prejudiced his case and thus constituted ineffective assistance of counsel; (2) insufficient evidence of premeditation and deliberation exists to support the finding the attempted murder was willful, deliberate, and premeditated; (3) insufficient evidence of intent to kill exists to support his attempted murder conviction; (4) the trial court violated defendant's rights to due process and a fair trial by failing to instruct the jury on both self-defense and attempted voluntary manslaughter; (5) trial counsel's failure to request both a self-defense and attempted voluntary manslaughter instruction constituted ineffective assistance of counsel; (6) the prosecutor engaged in improper burden shifting during closing argument, which constituted prejudicial misconduct; and (7) the cumulative error was prejudicial.  Defendant further contends remand for resentencing is required under (1) the recently passed Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill No. 518), which amended section 654, subdivision (a) to allow the trial court to exercise discretion on which sentence to impose;

---

[1] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names.  No disrespect is intended.

[2] Subsequent statutory references are to the Penal Code, unless otherwise indicated.

and (2) the recently passed Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill No. 567), which limits a trial court's discretion in sentencing a defendant to the upper term.  The People concede resentencing is required.

We vacate the sentence and remand for resentencing consistent with changes made to sections 654, subdivision (a) by Assembly Bill No. 518, and 1170, subdivision (b) by Senate Bill No. 567.  In all other respects, we affirm.

## FACTS

### Prosecution Case-In-Chief

### I.      The Stabbing

#### A.      *Mary K.'s Testimony*

On August 30, 2016, Mary was camping with her boyfriend Mark S. and his two friends Sharma S. and Shane in Jupiter, California.  Mary was in her tent when she heard yelling and arguing on a hill 20 yards away near where Shane and Sharma were staying.  Mary looked up towards the hill and saw three men standing in front of Shane and Sharma, one of them being defendant.  The group was arguing about several missing items, including an Apple computer.

Mary approached the group to try to diffuse the situation.  Mary saw the three men, including defendant, begin to kick and punch Shane.  Mary noticed defendant was wearing glasses.  Shane eventually was knocked to the ground and, while on the ground, he attempted to defend himself.  Subsequently, Mark stepped in to try to help Shane and picked up a hose which had a watering spout on the end of it.  Mark tried to intimidate the three men, but he never swung the hose.  Mark then dropped the hose and picked up either a two-by-four or four-by-four piece of wood and tried to intimidate the group; he never swung the piece of wood.  Mark then dropped the piece of wood and Shane picked it up.  Shane never swung the piece of wood at the group.  At this point, defendant told Shane, "[T]he guys brought him up there to do something, so let's do it," and "[L]et's get the show on the road."

Defendant then tackled Shane and they rolled down the hill punching each other. Shane stood up and held his hand over his side underneath his arm. Mary observed a large puddle of blood soaking through Shane's shirt. Defendant just stood there and stared at Shane and then subsequently took off running up the hill and left.

### B.    Sharma S.'s Testimony

On August 30, 2016, Sharma was at the campsite in Jupiter with her boyfriend Shane. Sharma was sitting inside the door of the camper they were staying in, while Shane was sitting on a log washing clothes. Sharma saw three men, including Cole C. and defendant, and two women approach their campsite. Cole went straight up to Shane and hit him, knocking him off the log. Cole accused Shane of stealing a laptop computer. Sharma and Shane did not have a laptop computer. Defendant, who was the only person wearing glasses in the group, and the other two men were kicking Shane in the head and stomach, and they all began to roll around on the ground.

Sharma attempted to stop Cole, however the two women in the group began to argue with her. Sharma heard defendant say, "You brought me here, are we going to do this?" Cole and the other individuals continued to kick and hit Shane and the fight went down the hill. Sharma could not see the group once they went down the hill. The next thing Sharma saw was Shane approach her with blood pouring out of him in different areas. Shane could barely talk and breathe. Sharma accompanied Shane out of the campsite, where they were able to call for an ambulance.

### C.    Mark S.'s Testimony

On the evening of August 30, 2016, Mark was walking up the hill at the campsite to grab something when he observed three men, including defendant,[3] beating up Shane. Shane attempted to defend himself. Mark yelled at the men, "What's going on here," and

---

[3] In response to a question about whether defendant was wearing glasses that evening, Mark testified, "I don't believe so, but it's been a while. I don't think he was wearing glasses, I don't know."

proceeded to pick up a four-by-four that was approximately three feet long. Mark was unable to swing the four-by-four because his arm was hurt and he recently had surgery on his hand. Mark threw down the four-by-four and instead grabbed a water hose. The three men and Shane were arguing about a computer. During the argument, Mark observed defendant holding a knife. Defendant then said, "Well, boys, you got me here, let's get this show on the road." Defendant, while still holding the knife, lunged at Shane and they both rolled down the hill fighting. The other two men ran away. The next thing Mark saw was Shane bleeding profusely. Shane was not bleeding, nor was he stabbed, prior to defendant lunging at him. Mark then grabbed Shane, got into the truck, and drove away.

### D. Cole C.'s Testimony

On August 30, 2016, Cole, defendant, Jesse B., Mikiah S., and Kate F. went to the campsite to talk to Shane about property missing from Cole's trailer, specifically a laptop, diesel cans, a generator, and a cell phone. At the time, Mikiah was Cole's girlfriend and Kate was defendant's wife. Defendant is Mikiah's uncle. Jesse is Cole's uncle. Cole initially did not want to bring defendant along but was convinced by Mikiah to bring him. Cole was hesitant to bring defendant because he knew, based on "his personality and where he came from" that it "wouldn't be a good idea to bring him." Cole explained that defendant's "demeanor and the things that he says just had [Cole] scared," and Cole had seen defendant "lash out at people before."

Cole and the group arrived at the campsite and Cole told defendant to stay in the truck. Jesse was talking with Shane when defendant ran up and kicked Shane in the face. Defendant was wearing glasses. Shane then picked up a roofing rake and swung it towards Jesse. Jesse hit Shane.[4] Shane "went down," then got back up and swung the rake at defendant. Defendant blocked the first hit with his hand but was hit with the

---

[4] Cole testified the only two people who hit Shane were defendant and Jesse.

5.

second swing causing the rake to break over defendant's shoulder. This caused defendant's fingers and knuckles to bleed. Defendant's knuckles "were split to the bone."

Cole then observed defendant and Shane "fistfighting," and it appeared that defendant was punching Shane multiple times. Shane no longer had the rake. Jesse pulled defendant off Shane and put defendant on the ground. At that point, Cole realized defendant had been stabbing Shane, rather than punching him. Cole saw defendant holding a four- to five-inch-long knife. Shane stood up and told Cole, "[H]e stabbed me." At this point, Cole, defendant, and Jesse ran to Cole's truck and sped away from the campsite. Cole drove away and dropped defendant off at his house. Defendant told Cole he was going to turn himself in for the stabbing, but never did. Defendant also told Cole to change his clothing to get rid of the evidence. Later in the evening, Cole was interviewed by police and told them defendant asked a friend for money to skip the state.

*E. Shane M.'s Testimony*

In the early evening of August 30, 2016, Shane and Sharma were camping together in Jupiter. Shane was doing laundry when a group of men walked up to him and started accusing him of stealing. Shane recognized one of the men as Cole. Cole then punched Shane in the mouth causing Shane to fall on the ground. Shane then got back up and saw two other men, one of them being defendant, walk towards him. Shane was hit again causing him to fall on the ground, however he did not know if it was defendant or the other man who hit him. At some point, Shane grabbed a garden rake and tried to defend himself, however, the rake broke apart when he swung it because it was "dry-rotted." Defendant jumped on Shane after the rake broke. While on the ground, Shane was kicked multiple times in the face. Shane looked down and saw that he was bleeding and realized he had been stabbed. He suffered stab wounds in the arm and lung. He did not know who stabbed him. Shane was in the ICU (intensive care unit) and hospital for several days and had to undergo surgery.

6.

## II. Law Enforcement Investigation

On August 30, 2016, at approximately 7:00 p.m., officers were dispatched to the Jupiter area regarding a stabbing. Officers encountered Shane inside the passenger's seat of a truck that was driving out of the campsite area. Shane was wearing a T-shirt covered in blood and was having difficulty breathing. Officers observed a stab wound through Shane's shirt. Shane was attended to and eventually transported via ambulance to the hospital. Officers then went to the stabbing scene and located a pair of glasses near a trail of blood on the ground.

The next day, detectives went to the hospital and contacted Shane. Shane was unable to provide the suspect's identity; however, he did state an individual involved had a shaved head and wore glasses. Shane was able to identify Cole as one of the individuals in the altercation but told officers Cole was not the one who stabbed him. According to Shane, the individual who stabbed him wore glasses. Detectives then pulled defendant's DMV (Department of Motor Vehicles) photograph and, in the photograph, defendant was wearing glasses. The glasses in the photograph matched the glasses found at the stabbing scene. Shane was shown a photographic lineup and positively identified defendant as the individual who stabbed him.

Later that same day, Cole went to the sheriff's station, where he was interviewed by detectives. Cole told detectives that he was not the person who stabbed Shane. Detectives described Cole as nervous and reluctant but wanting to do the right thing.

Officers eventually authored a *Ramey*[5] arrest warrant for defendant and defendant was apprehended several months later in Nevada.

## Defense Case-In-Chief

Defendant did not testify during the trial, nor did the defense present any evidence. However, defense counsel cross-examined all nine of the prosecution's witnesses.

---

[5] *People v. Ramey* (1976) 16 Cal.3d 263.

## DISCUSSION

**I.    Defendant Has Not Met His Burden to Demonstrate Trial Counsel's Failure to Object to Testimony Regarding Defendant's Prison History Constituted Ineffective Assistance of Counsel.**

Defendant contends his trial counsel was ineffective in failing to object to Cole's testimony that "[defendant has] been in and out of prison most of his life." He contends trial counsel's failure to object deprived him of a fair trial. We disagree.

### A.    Additional Factual Background

The relevant exchange between Cole and the prosecutor during direct examination is as follows:

"Q.    Okay. So you bring Jesse to do some talking; and why do you bring the defendant?

"A.    John Paul?

"Q.    Right.

"A.    At first he asked to go and I said no, and then the mother of my kids said, 'Just let him go.' I said, 'All right, you can go, but you stay in the truck.'

"Q.    Okay. Why did you—when he asked to go, why did you initially tell him no?

"A.    I just—I knew his personality and where he came from, it wouldn't be a good idea to bring him.

"Q.    Well, what does that mean?

"A.    He's been in and out of prison most of his life, so—

"Q.    Well, were you concerned that he might lose control and become violent at this scene?

"[DEFENSE COUNSEL]:  Objection, leading.

"THE COURT:  Sustained.

8.

"Q.     (By [Prosecutor])  Okay, let me ask you, you knew of his personality so you didn't want him to go with you.  So what was it about his personality that caused you concern?

"A.     I just—I don't—I don't recollect, I don't know.  It's—his demeanor and the things that he says just had me scared.  I didn't want—  [¶] . . . [¶]

"Q.     . . . And you testified you knew his personality and you knew he'd been in and out of prison, right?

"A.     Right.

"Q.     And you further testified that you knew his demeanor and it had you scared?

"A.     It did.

"Q.     Okay.  So what about his demeanor scared you that night?

"A.     I don't know how to answer it.  Just the talks me and him have had about him being in the SHU in prison and the things that—

      "[DEFENSE COUNSEL]:  Objection, nonresponsive.

      "THE WITNESS:  I just didn't want that around—

      "THE COURT:  I'll sustain the objection.

      "[DEFENSE COUNSEL]:  Move to strike, please.  [¶] . . . [¶]

      "THE COURT:  I'll grant the motion to strike, the jury will disregard the entire answer after the words 'I don't'—after 'I don't know how to answer,' the jury will disregard the rest of that answer."  (Boldface omitted.)

B.     <u>Applicable Law</u>

Defendant has the burden of proving ineffective assistance of counsel.  (*People v. Pope* (1979) 23 Cal.3d 412, 425, overruled on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)  To establish such a claim, defendant must show (1) his counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's error, a different result would have been reasonably probable.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*); *People v. Ledesma*

(1987) 43 Cal.3d 171, 216-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.)

"Because of the difficulties inherent in making the evaluation [of counsel's performance], a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Strickland*, *supra*, 466 U.S. at p. 689.) "When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.) Reversal is permitted " 'only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' " (*People v. Arredondo* (2019) 8 Cal.5th 694, 711.)

"A claim of ineffective assistance based upon a failure to object to inadmissible evidence will not usually succeed on direct appeal." (*People v. Clotfelter* (2021) 65 Cal.App.5th 30, 55.) "Whether to object to inadmissible evidence is a tactical decision; because trial counsel's tactical decisions are accorded substantial deference [citations], failure to object seldom establishes counsel's incompetence." (*People v. Hayes* (1990) 52 Cal.3d 577, 621.) "In light of the deferential standard, appellate courts do not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight and, for this reason, tactical errors do not generally provide a basis for reversing a conviction." (*People v. Clotfelter*, at p. 55, accord, *People v. Scott* (1997) 15 Cal.4th 1188, 1212.)

C.    Analysis

Applying *Strickland*'s two-part test, defendant's claim of ineffective assistance of counsel fails on both prongs.

Here, we are unable to say trial counsel's performance was deficient because there are plausible tactical reasons for not objecting to the testimony. Trial counsel may have decided not to object to avoid drawing the jury's attention to this testimony. (See *People v. Harris* (2008) 43 Cal.4th 1269, 1290 ["[C]ounsel could also have decided that objecting would focus the jury's attention . . . in ways that would not be helpful to the defense."]; see also *People v. Ghent* (1987) 43 Cal.3d 739, 773 [holding that although defense counsel failed to object to the prosecutor's personal opinion regarding the appropriateness of the death penalty in the case, ineffective assistance of counsel was not found because "[c]ounsel may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the prosecutor's isolated comments"].) Notably, when Cole again referred to defendant's prior prison stint, trial counsel objected, and the trial court sustained the objection and provided the jury with an admonition. Trial counsel may have decided not to object the first time to avoid drawing the jury's attention, but objected when it became clear the prosecutor intended to pursue this line of questioning. Moreover, one of the defense strategies in this case was to characterize Cole as untrustworthy,[6] the instigator in the fight, and the individual who stabbed Shane. Trial counsel may have tactically decided the testimony carried little weight in light of Cole's diminished credibility and, in fact, the testimony may have supported an argument Cole was lying regarding his role in the offense.

However, even assuming trial counsel's performance was deficient, defendant was not prejudiced. First, the testimony that defendant had been in and out of prison was both brief and vague and was similar to the testimony the jury had been instructed to disregard. Second, the evidence of defendant's guilt was overwhelming. Prior to the stabbing, Mary, Sharma, and Mark all heard defendant say some version of "let's do

---

[6] Defense counsel impeached Cole's testimony with three prior felony convictions involving moral turpitude.

this." Both Mark and Cole testified defendant had a knife in his possession and they observed defendant lunge at Shane with the knife in hand. When the altercation between defendant and Shane ended, Shane was covered in blood and had stab wounds on his body. Although Shane initially was unable to specifically identify defendant as the stabber, he told officers the individual who stabbed him had a shaved head and wore glasses. There was evidence defendant was the only individual in the group wearing glasses and a pair of glasses were found near where the stabbing had taken place. Shane later identified defendant based on a photographic lineup in which defendant wore glasses matching the pair found at the stabbing scene. It was not reasonably probable defendant would have obtained a better result had the brief reference to defendant's prison history been excluded. (*Strickland*, *supra*, 466 U.S. at pp. 687-688.)

## II. Substantial Evidence Supports the Jury's Finding the Attempted Murder Was Willful, Deliberate, and Premeditated.

Defendant further contends there was insufficient evidence supporting the jury's special finding the attempted murder was willful, deliberate, and premeditated. We disagree.

### A. Standard of Review

"To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357, italics in original.) "Given this deferential standard of review, a

12.

'defendant bears an enormous burden in claiming there is insufficient evidence' to support a conviction." (*People v. Wear* (2020) 44 Cal.App.5th 1007, 1020.)

"Regarding a specific intent element of a crime, we have explained that '[e]vidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) "Moreover, the standard of review that applies to insufficient evidence claims involving circumstantial evidence is the same as the standard of review that applies to claims involving direct evidence." (*Ibid.*) "We 'must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]' [Citation.] 'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.] Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." (*People v. Zamudio*, *supra*, 43 Cal.4th at pp. 357-358.)

### B.     Applicable Law

"To convict a defendant of first degree premeditated murder or attempted murder, the prosecution must establish 'beyond a reasonable doubt . . . that [the defendant] acted with the specific intent to kill, and with premeditation and deliberation.' " (*People v. Leon* (2010) 181 Cal.App.4th 452, 463.) Premeditation "means '[t]o think on, and revolve in the mind, beforehand; to contrive and design previously.' " (*People v. Bender* (1945) 27 Cal.2d 164, 183.) Deliberation "means 'formed, arrived at, or determined upon as a result of careful thought and weighing of considerations . . . .' " (*Ibid.*) Thus, " '[a]n intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " (*People v. Pearson*

13.

(2013) 56 Cal.4th 393, 443.) However, " ' "[t]he process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . .' " ' " (*People v. Houston* (2012) 54 Cal.4th 1186, 1216.)

In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), the California Supreme Court articulated three types of evidence relevant to determining whether a defendant killed or attempted to kill with premeditation and deliberation: (1) evidence of the defendant's conduct prior to the killing – i.e. planning; (2) evidence regarding a defendant's prior relationship and/or conduct with the victim which could suggest a "motive" to kill; and (3) evidence about the nature of the killing. (*Id*. at pp. 26-27.) The *Anderson* factors need not be present in any special combination (*People v. Booker* (2011) 51 Cal.4th 141, 173 (*Booker*)), and are not required to find deliberation and premeditation, but remain useful in reviewing the evidence (*People v. Koontz* (2002) 27 Cal.4th 1041, 1081).

C.     Analysis

Focusing on the *Anderson* factors, defendant contends the evidence does not support a finding this killing was committed with preexisting reflection and weighing of the circumstances, but rather was a "rash, panicked, and unconsidered impulse." We conclude substantial evidence supports the jury's finding of premeditation and deliberation. First, the evidence is sufficient to show defendant engaged in a level of planning prior to the stabbing. Defendant brought a knife with him to confront Shane and stated a version of "let's do this" prior to attacking him. (See *People v. Elliot* (2005) 37 Cal.4th 453, 471 ["That defendant armed himself prior to the attack 'supports the inference that he planned a violent encounter.' "]; see also *People v. San Nicolas* (2004) 34 Cal.4th 614, 658 ["The act of planning—involving deliberation and premeditation—requires nothing more than a 'successive thought[] of the mind.' "].) A reasonable jury

could have concluded defendant's conduct, coupled with the statement "let's do this" established defendant planned the attack immediately before stabbing Shane.

Second, as to motive, defendant knew he was going to the campsite to help Cole confront Shane about stolen property. Cole described defendant as having a concerning "demeanor" that made Cole not want to bring him along. A reasonable jury could have interpreted defendant's "demeanor" as suggesting he arrived at the campsite with the objective of attacking Shane to support Cole's efforts in getting his property back. (See *People v. Lunafelix* (1985) 168 Cal.App.3d 97, 102 ["[T]he law does not require that a[n] [attempted] first degree murderer have a 'rational' motive for killing. Anger at the way the victim talked to him [citation] or any motive, 'shallow and distorted but, to the perpetrator, genuine' may be sufficient."]; see also *People v. Edwards* (1991) 54 Cal.3d 787, 814 ["Motive here is, indeed, elusive. This was apparently a random killing for a reason known only to defendant, a reason he has elected not to disclose, as is his right." However, a "senseless, random" killing nonetheless supports a verdict of first degree murder so long as the evidence otherwise supports a finding the murder was conducted with premeditation and deliberation.], overruled on other grounds as stated in *People v. McDaniel* (2021) 12 Cal.5th 97, 138.)

Finally, as to the nature of the attack, defendant did not stab Shane only once, but "repeatedly." Shane received a knife wound in the torso causing him to suffer a punctured lung, and a knife wound in the arm. (*People v. Harris* (2008) 43 Cal.4th 1269, 1287 [holding substantial evidence of premeditation and deliberation existed because the "defendant was armed with a knife and stabbed [victim] without provocation directly in the heart with enough force to penetrate part of a rib and pierce entirely through the heart."].)

Substantial evidence supports the jury's special finding the attempted murder was committed with premeditation and deliberation.

15.

## III. Substantial Evidence of Defendant's Intent to Kill Supports the Conviction of Attempted Murder.

Defendant further contends there was insufficient evidence of his intent to kill to support the attempted murder conviction. We disagree.

The jury found the attempted murder was willful, deliberate, and premeditated. The same evidence which we found substantial to support that finding is necessarily sufficient to support the jury's finding defendant intended to kill Shane. (See *People v. Concha* (2009) 47 Cal.4th 653, 662 ["[W]hen malice is *express* because the defendant possessed a specific intent to kill, first degree murder liability may be proper if the charged defendant personally acted willfully, deliberately, and with premeditation."]; *People v. Thomas* (1945) 25 Cal.2d 880, 900 [to prove a defendant premeditated and deliberated the consequences of his action, there must be "substantially more reflection than may be involved in the mere formation of a specific intent to kill"].)

## IV. The Trial Court Was Not Required to Instruct the Jury on Self-defense or Attempted Voluntary Manslaughter Resulting from Imperfect Self-defense.

Defendant further contends the trial court violated his due process rights by failing to instruct the jury with CALCRIM No. 3471 (Right to Self-defense: Mutual Combat or Initial Aggressor) and CALCRIM No. 571 (Voluntary Manslaughter: Imperfect Self-defense or Imperfect Defense of Another – Lesser Included Offense). We disagree.[7]

### A. Applicable Law

A trial court must instruct the jury sua sponte on general principles of law applicable to the case. (*People v. Sedeno* (1974) 10 Cal.3d 703, 715.) A trial court is required to instruct on self-defense only when there is substantial evidence supporting the

---

[7] Defendant acknowledges his trial counsel failed to request these instructions and, to the extent we conclude the issue is forfeited, he argues his counsel was ineffective in this regard. Because we address and reject defendant's claim on the merits (*People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 916 [acknowledging that a court may reach the merits of a claim of instructional error that potentially affects a party's substantial rights]), we do not reach his argument that counsel was ineffective.

16.

defense and the defendant is either relying on the defense or the defense is not inconsistent with the defendant's theory of the case. (*Id*. at p. 716.) The court must instruct on the lesser included offense of voluntary manslaughter when there is substantial evidence the defendant killed in imperfect self-defense. (*People v. Elmore* (2014) 59 Cal.4th 121, 134.) "Substantial evidence is not ' " 'any evidence, no matter how weak,' " ' but evidence from which a reasonable jury could conclude that the defendant was guilty only of [the lesser included offense]." (*People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1228, italics omitted.)

Attempted murder is the unlawful attempted killing of a human being with malice aforethought. (§§ 187, subd. (a), 664.) Self-defense is a complete defense to attempted murder. (*People v. Stitely* (2005) 35 Cal.4th 514, 551; see § 197, subd. (1).) "For killing to be in self-defense, the defendant must actually and reasonably believe in the need to defend. [Citation.] . . . To constitute 'perfect self-defense,' i.e., to exonerate the person completely, the belief must also be objectively reasonable. [Citations.] As the Legislature has stated, '[T]he circumstances must be sufficient to excite the fears of a reasonable person . . . .' [Citations.] . . . 'Fear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice. The defendant's fear must be of imminent danger to life or great bodily injury.' " (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082, fn. & italics omitted.) Generally, an initial aggressor whose victim fights back in self-defense may not invoke the doctrine of self-defense against the victim's legally justified acts. (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1.) An initial aggressor may use self-defense when he commits a simple assault, and the victim responds with deadly or other excessive force. (*People v. Quach* (2004) 116 Cal.App.4th 294, 301-302.)

In comparison, imperfect self-defense, "is the killing [or attempted killing] of another human being under the actual but unreasonable belief that the killer was in imminent danger of death or great bodily injury. [Citation.] Such a[n attempted] killing

17.

is deemed to be without malice and thus cannot be [attempted] murder." (*Booker*, *supra*, 51 Cal.4th at p. 182.) Imperfect self-defense is therefore a " 'theor[y] of partial exculpation' that reduce[s] [attempted] murder to [attempted] manslaughter by negating the element of malice." (*People v. Moye* (2009) 47 Cal.4th 537, 549.) " '[U]nreasonable self-defense' is . . . not a true defense; rather, it is a shorthand description of one form of [attempted] voluntary manslaughter. And [attempted] voluntary manslaughter, whether it arises from unreasonable self-defense or from [the attempted] killing during a sudden quarrel or heat of passion, is not a defense but a crime; more precisely, it is a lesser offense included in the crime of [attempted] murder." (*People v. Barton* (1995) 12 Cal.4th 186, 200-201.)

B.      Analysis

Defendant contends there was substantial evidence to support the trial court giving instructions on both self-defense and imperfect self-defense resulting in the lesser included offense of attempted voluntary manslaughter. We conclude neither instruction was supported by the evidence.

i.      *Perfect Self-defense*

First, there was no evidence to support any circumstance that would have permitted defendant to use deadly force against Shane, such as to warrant an instruction on perfect self-defense. It is uncontroverted that defendant was the initial aggressor. His initial attack on Shane was not, however, a simple assault (see § 240). It, instead, involved hitting and kicking and knocking Shane to the ground. While it is true that, "if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant [has] the right to defend . . . himself . . . with deadly force . . ." (CALCRIM No. 3471, see *People v. Quach*, *supra*, 116 Cal.App.4th at pp. 301-302), the evidence here, even when viewed in the light most favorable to defendant, does not suggest any such sudden and deadly force by Shane, much less force that was such that defendant could not withdraw

18.

from the fight. Shane either held a four-by-four at one point without swinging it, or swung a rake at defendant, causing the rake to break. Additionally, there is no suggestion in the evidence that Shane used force against defendant at the time defendant began stabbing him. Defendant was not entitled to an instruction on perfect self-defense.

### ii. Imperfect Self-defense

Additionally, substantial evidence did not support the trial court instructing on imperfect self-defense and the lesser included offense of attempted voluntary manslaughter. Imperfect self-defense cannot be invoked by a defendant whose own wrongful conduct created the circumstances in which the opponent's attack was legally justified. (*Booker*, *supra*, 51 Cal.4th at p. 182; *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 834, disapproved on other grounds in *People v. Dalton* (2019) 7 Cal.5th 166, 214.)

Defendant contends he had the right to use the knife and intended to only use non-deadly force towards Shane. Defendant relies heavily on *People v. Vasquez* (2006) 136 Cal.App.4th 1176 (*Vasquez*) in support of this contention. In *Vasquez*, the defendant, who was confined to a wheelchair, confronted the victim in an alleyway and accused the victim of raping the defendant's deceased younger brother years earlier. (*Id.* at p. 1178.) The victim lunged at the defendant and began to choke him. (*Ibid*.) In response, the defendant pulled out a gun, repeatedly shot the victim, and killed him. (*Ibid*.) The appellate court acknowledged the defendant was arguably "up to no good" when he invited his victim to the alley, and that the defendant "generally set in motion the circumstances that led [the victim] to attack." (*Id.* at p. 1180.) Nonetheless, the reviewing court concluded the trial court should have provided the jury with an imperfect self-defense instruction because "[i]t was for the jury sitting as the trier of fact to decide whether [the defendant] actually feared serious injury or death from being choked" and "the evidence suggested [the victim], not the defendant[], used unlawful force first." (*Id.* at pp. 1179, 1180.) In other words, because the victim's escalation to deadly force was

triggered by the defendant's verbal, rather than physical, aggression, the defendant was permitted to press his claim of imperfect self-defense. (*Id.* at pp. 1178-1179.)

The facts of this case are distinguishable. Defendant did not merely engage in verbal taunts to provoke Shane, but rather physically attacked Shane. Defendant was the initial aggressor. Shane was legally justified in resorting to self-defense. Imperfect self-defense may not be relied on in such circumstances. (*In re Christian S.*, *supra*, 7 Cal.4th at p. 773, fn. 1; *People v. Frandsen* (2011) 196 Cal.App.4th 266, 272.) Defendant was not entitled to an instruction on imperfect self-defense.

### iii. Prejudice

Even assuming Shane's use of a four-by-four or rake in self-defense somehow constituted a sudden escalation of the quarrel that warranted the trial court instructing the jury on self-defense or imperfect self-defense and the lesser included offense of attempted voluntary manslaughter, the error was harmless under any standard of review.[8] (*Chapman v. California* (1967) 386 U.S. 18, 24 [holding that when an error violates the Constitution, prejudice is measured by whether the prosecution can show beyond a reasonable doubt that the error was harmless]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [holding that state law error is prejudicial only if it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error].) It was undisputed that defendant stated some version of "let's do this" prior to his attack on Shane. The evidence suggested Shane was no longer holding the rake or the four-by-four at the time defendant stabbed him. Significantly, the jury found that the attempted murder was deliberate and premeditated. In so doing, the jury necessarily found defendant carefully thought about, considered beforehand, and weighed the

---

[8] Our Supreme Court has granted review to consider the question of which standard of prejudice applies when a trial court errs in refusing to instruct the jury on voluntary manslaughter based on imperfect self-defense. (*People v. Schuller* (2021) 72 Cal.App.5th 221, review granted Jan. 19, 2022, S272237.)

considerations for and against his decision to attempt to kill Shane. (See *People v. Bender*, *supra*, 27 Cal.2d at p. 183.) Lawful defense of self requires both a reasonable ground to apprehend a particular danger (§ 197) and an action occurring under the influence of such fears alone (§ 198; *People v. Trevino* (1988) 200 Cal.App.3d 874, 879-880). Under the facts of this case, the jury's findings of premeditation and deliberation are inconsistent with a finding defendant acted in either perfect or imperfect self-defense. Thus, we conclude "the jury verdict would have been the same absent the [alleged] error." (*Neder v. United States* (1999) 527 U.S. 1, 19; see *id.* at p. 26; accord, *People v. Merritt* (2017) 2 Cal.5th 819, 832.)

## V.  The Prosecutor's Statements to the Jury During Closing Argument Did Not Constitute Prosecutorial Misconduct.

Defendant further contends the prosecutor committed prejudicial misconduct during closing argument by suggesting defendant had a duty to call certain witnesses and by shifting the burden of proof to defendant. To the extent defense counsel failed to preserve the issue by failing to request a jury admonition, defendant argues counsel was ineffective. We conclude defendant did not forfeit his challenge to the prosecutor's comments by failing to request an admonition. However, we disagree with defendant's characterization of the prosecutor's argument and conclude the prosecutor did not engage in misconduct.

### A.  Additional Factual Background

During the prosecution's closing argument, the prosecutor stated the following:

> "And everybody's consistent that at that point where there is a break, Shane . . . has not yet been stabbed. He's just been punched and kicked, but the stabbing has not happened yet. And Mark . . . says they're all kind of standing there for a second and the defendant has a knife. And this is when he says, 'Well, boys, you brought be out here, let's do this.' [¶] Everybody's consistent that he says that. There's no evidence to the contrary, nobody says he didn't say that."

21.

Trial counsel objected to the statement as improper burden shifting; however, the court overruled the objection.

B.     Applicable Law

" ' "A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.]  In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.]  A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' [Citations.]" ' [Citation.] 'A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct. [Citation.]  Also, a claim of prosecutorial misconduct is not preserved for appeal if defendant fails to object and seek an admonition if an objection and jury admonition would have cured the injury.' " (*People v. Tully* (2012) 54 Cal.4th 952, 1009-1010.)

"When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)  "Advocates are given significant leeway in discussing the legal and factual merits of a case during argument." (*Id*. at p. 666.)  A prosecutor may comment on the state of the evidence or on the defense's failure to call logical witnesses. (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1275.)

C.    <u>Analysis</u>

"A claim of prosecutorial misconduct is ordinarily preserved for appeal only if the defendant made 'a timely and specific objection at trial' and requested an admonition." (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 853.) " ' "[T]he absence of a request for a curative admonition" ' may . . . be excused if ' " 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.' " ' " (*Ibid*.) Here, defendant objected to the prosecutor's comments and the court immediately overruled the objection. His failure to request a curative admonition does not forfeit his challenge on appeal. The People do not argue otherwise.

On the merits, we conclude the challenged statement did not constitute prosecutorial misconduct. Again, the prosecutor stated: "And this is when [defendant] says, 'Well, boys, you brought me out here, let's do this.' [¶] Everybody's consistent that he says that. There's no evidence to the contrary, nobody says he didn't say that."

Defendant contends "[t]he prosecutor's argument indicated [defendant] had a duty to call certain witnesses to state that [defendant] had acted otherwise, and [thus] shifted the burden to [defendant]." Quoting *People v. Gaines* (1997) 54 Cal.App.4th 821, 825 (*Gaines*), defendant further argues:

> " 'The prosecutor was in plain effect presenting a condensed version of
> what he was telling the jury would have been the defense witnesses'
> testimony. When this tactic is achieved in the guise of closing argument,
> the defendant is denied Sixth Amendment rights to confrontation and cross-
> examination.' "

We conclude *Gaines* is distinguishable and disagree with defendant that the prosecutor purported to tell the jury "what the testimony of defense witnesses would have been, and that it would have conflicted with [defendant's] version of events."

In *Gaines*, the defendant testified that, on the night of the offense, he was with a man named Ray Hicks immediately before going home. The prosecutor mentioned

during closing argument that Hicks was present in the courtroom during trial and could have, but did not, testify to corroborate the defendant's testimony. (*Gaines*, *supra*, 54 Cal.App.4th at pp. 823-824.) Specifically, the prosecutor stated, " 'If Mr. Hicks were here, he could corroborate that [defendant's] story. . . . This friend of the defendant, this person that presumably would like to help him out, could help the defendant. . . . Mr. Hicks didn't testify. That decision was made after the defendant testified, because the defendant slipped and he told some untruths. And Mr. Hicks was going to testify to the contrary.' " (*Ibid*.) The court concluded this statement constituted error because "[t]he prosecutor was in plain effect presenting a condensed version of what he was telling the jury would have been Mr. Hicks's testimony." (*Id*. at p. 825.)

Here, the prosecutor was not hypothesizing about what a potential witness would have testified to. The prosecutor did not tell the jury to speculate on any facts outside the evidence produced in the trial. The prosecutor only commented on the fact multiple, uncontradicted witnesses were consistent in testifying defendant said, "let's do this" before stabbing Shane. Accordingly, these statements did not constitute misconduct.

## VI.     Cumulative Prejudice.

In supplemental briefing, defendant argues he was prejudiced by the cumulative effect of counsel's failure to object to Cole's testimony, the court's failure to instruct on self-defense, and the prosecutor's misconduct. However, we have concluded trial counsel was not ineffective, the court did not err in failing to instruct on self-defense, and the prosecutor did not engage in misconduct. Accordingly, there is no cumulative effect to weigh. (*In re Reno* (2012) 55 Cal.4th 428, 483 [holding that each of the defendant's individual claims "cannot logically be used to support a cumulative error claim [where] we have already found there was no error to cumulate"].) Furthermore, "[t]o the extent there are a few instances in which we have . . . assumed [the] existence [of error], no prejudice resulted. The same conclusion is appropriate after considering their cumulative effect." (*People v. Valdez* (2012) 55 Cal.4th 82, 181.)

24.

**VII.  Senate Bill No. 567.**

In supplemental briefing, defendant contends the case should be remanded for resentencing in light of the passage of Senate Bill No. 567, which generally mandates the middle term as the presumptive sentence for a term of imprisonment unless certain circumstances, other than a prior conviction, have been stipulated to or found true beyond a reasonable doubt.  The People concede resentencing is required on this basis.  For reasons we explain, we accept the People's concession.  Accordingly, we will vacate defendant's sentence and remand for resentencing.

Relevant here, the trial court sentenced defendant on count 2 (§ 245, subd. (a)(1)) to the upper term of four years.  The sentence was stayed pursuant to section 654.

A.     Applicable Law

Prior to January 1, 2022, section 1170, subdivision (b) read, in relevant part, as follows:

> "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, *the choice of the appropriate term shall rest within the sound discretion of the court*."  (§ 1170, former subd. (b), italics added.)

Senate Bill No. 567 amended section 1170, subdivision (b) in relevant part as follows:

> "(1)  When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence *not to exceed the middle term*, except as otherwise provided in paragraph (2).

> "(2)  The court may impose a sentence exceeding the middle term *only when there are circumstances in aggravation* of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.  Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation

25.

alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense." (§ 1170, subd. (b), italics added; as amended by Sen. Bill No. 567; Stats. 2021, ch. 731, § 1.3.)

As a general rule, statutes are presumed to apply prospectively. (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 307 (*Lara*), superseded by statute on other grounds as stated in *In re M.S.* (2019) 32 Cal.App.5th 1177, 1191.) "Therefore, the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication." (*Lara*, at p. 307.) Under the *Estrada* rule, "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*).) This rule "rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 881.)

Senate Bill No. 567 is silent as to whether it applies retroactively. However, it contains no savings clause providing only for prospective relief. Furthermore, the bill constitutes an ameliorative change in law, inasmuch as it permits the imposition of a sentence exceeding the middle term only when facts or circumstances in aggravation have been stipulated to or found true beyond a reasonable doubt. (§1170, subd.

26.

(b)(1), (2); Sen. Bill No. 567.) Therefore, applying the *Estrada* rule, we conclude Senate Bill No. 567 applies retroactively to sentences that were not final prior to January 1, 2022.

### B. Analysis

Here, as noted above, defendant was sentenced prior to the amendment to section 1170. The trial court sentenced defendant on count 2 to the aggravated term of four years without the facts or circumstances in aggravation having been proved as now required by that amendment. (§ 1170, subd. (b)(1), (2).) It is undisputed that defendant's sentence is not yet final. Accordingly, we will vacate the sentence and remand for resentencing consistent with the amendments to section 1170.

## VIII. Assembly Bill No. 518.

In supplemental briefing, defendant contends this case must be remanded for resentencing in light of the passage of Assembly Bill No. 518, which went into effect January 1, 2022, and affords the trial court new discretion in determining which sentence to impose under section 654. The People concede Assembly Bill No. 518 applies retroactively to defendant, but argue that we need not consider the merits of defendant's claim regarding the application of Assembly Bill No. 518, in light of our vacatur of the sentence and remand for resentencing pursuant to Senate Bill No. 567. We accept the People's concession regarding the retroactive application of Assembly Bill No. 518. We further agree that we need not determine the precise effect of this legislation on defendant's sentence in light of our remand for resentencing on other grounds.

### A. Applicable Law

Prior to January 1, 2022, section 654, subdivision (a) read as follows:

> "An act or omission that is punishable in different ways by different provisions of law *shall be punished under the provision that provides for the longest potential term of imprisonment*, but in no case shall the act or omission be punished under more than one provision. . . ." (§ 654, former subd. (a), italics added.)

27.

Assembly Bill No. 518 amended the language of section 654, subdivision (a) to read:

> "An act or omission that is punishable in different ways by different provisions of law *may be punished under either of such provisions*, but in no case shall the act or omission be punished under more than one provision. . . ." (§ 654, subd. (a), italics added; see Assem. Bill No. 518; Stats. 2021, ch. 441, § 1.)

As stated, although the general rule is statutes are presumed to apply prospectively (*Lara*, *supra*, 4 Cal.5th at p. 307), the *Estrada* rule states that "[w]hen the Legislature amends a statute so as to lessen the punishment . . . . [i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Estrada*, *supra*, 63 Cal.2d at p. 745.)

Assembly Bill No. 518 is silent as to whether the change to section 654 applies prospectively. However, as with Senate Bill No. 567, Assembly Bill No. 518 contains no savings clause providing only for prospective relief. Additionally, it constitutes an ameliorative change in law, inasmuch as it affords trial courts discretion to punish a defendant under a provision providing for a lower term of imprisonment. (§ 654, subd. (a); see Assem. Bill No. 518.) Therefore, applying the *Estrada* rule, we conclude Assembly Bill No. 518 applies retroactively to sentences that were not final prior to January 1, 2022.

B.      Analysis

Here, defendant was sentenced prior to the amendment to section 654, subdivision (a). At the time defendant was sentenced, the trial court was required to "punish[] [defendant] under the provision that provides for the longest potential term of imprisonment . . . ." (§ 654, former subd. (a).) Therefore, the trial court sentenced defendant in count 1, the provision that provided for the longest potential term of imprisonment, to an indeterminate term of 11 years to life, which included three years for inflicting great bodily injury (§ 12022.7, subd. (a)) and one year for using a knife

28.

(§ 12022, subd. (b)(1)).  The trial court sentenced defendant in count 2 to the aggravated term of four years, but stayed that term pursuant to section 654.  It is undisputed that defendant's sentence is not yet final.  On remand, defendant is entitled to a full resentencing, consistent with the amendments to section 654.  (See *People v. Buycks*, *supra*, 5 Cal.5th at p. 881.)

## DISPOSITION

Defendant's sentence is vacated and this matter is remanded for resentencing consistent with changes made to sections 654, subdivision (a) by Assembly Bill No. 518, and 1170, subdivision (b) by Senate Bill No. 567.  In all other respects, the judgment is affirmed.


DETJEN, Acting P. J.

WE CONCUR:


FRANSON, J.


DE SANTOS, J.