Filed 2/24/23  P. v. Holland CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>CHARLES ERIC HOLLAND,<br><br>        Defendant and Appellant. | B306813<br><br>(Los Angeles County<br>Super. Ct. No. SA09848) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  William L. Sadler, Judge.  Reversed and remanded.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

In California, the trial judge in a criminal case is required to instruct a jury on all lesser included offenses supported by substantial evidence. A jury convicted Charles Eric Holland of one count of second degree murder and three counts of assault with a firearm. It found him not guilty of first degree murder and attempted murder. The trial court did not instruct the jury on the lesser included offense of voluntary manslaughter based on an imperfect defense of others. The record contains substantial evidence that Holland believed he was acting to protect his codefendant from imminent great bodily injury or death. We conclude that the trial court's failure to instruct the jury on the lesser included offense of voluntary manslaughter was error under state law and that error was prejudicial. We reverse and remand.[1]

## PROCEDURAL BACKGROUND

On February 22, 2018, Holland was charged by information with one count of murder (Pen. Code, § 187, subd. (a)), three counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2)), and one count of attempted murder (Pen. Code, § 644/ § 187,

---

[1] Because we reverse on this basis, we need not reach Holland's claim that reversal is also warranted due to violations of his state and federal constitutional rights to a public trial. We also do not reach Holland's claim, which the People concede is meritorious, that the jury's findings on gang enhancements must be reversed, and the case remanded, due to changes in the law evoked by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699).

subd. (a)).[2]  Each count included firearm and gang allegations. Two codefendants were each charged with one count of murder, assault with a firearm, and attempted murder.  One codefendant entered a plea before trial.  The other entered a plea during trial. Trial was by jury.  Holland did not testify.

In March 2020, a jury convicted Holland of one count of second degree murder and three counts of assault with a firearm. It found the related firearm and gang allegations true.  It acquitted Holland of first degree murder and attempted murder.

The court sentenced Holland to a term of 15 years to life in state prison on the murder conviction, plus an additional term of 25 years to life for the firearm enhancement, for a total of 40 years to life.  The court imposed a concurrent determinate sentence for each of the remaining convictions.

In July 2020, Holland filed a timely notice of appeal.

### FACTUAL BACKGROUND[3]

On the afternoon of November 15, 2016, Jacare Smith was shot and killed in front of Young's Liquor Store Mart.  Security video footage from the incident showed a car pulling into the parking lot of the store and backing into a parking space.  The car had three people in it.  One was Saladin Minor, who testified at trial that he was present.  According to Minor, the other two individuals were William Long and Holland.  Holland, Minor, and

---

[2]     All subsequent undesignated statutory references are to the Penal Code.

[3]     The factual background is derived from the prosecution's evidence.  The defense rested without calling any witnesses.

3

Long were members of the Hawthorne Thug Family criminal street gang.

After Minor parked the car, Long got out and headed toward the store. Long never went inside, but instead stopped outside and exchanged words with Antwoine Robinson. Robinson was a member of the Campanella Park Piru criminal street gang. Minor followed Long out of the car and stood a "few paces" behind while Long conversed with Robinson. Video of the incident showed that a little later someone got out of the rear seat of the car and stood next to it. This individual then ran toward the store while pointing a gun.[4] Smith, who was standing near Robinson, was shot and died at the scene from a single bullet wound to the chest. Two other individuals had just walked out of the store. One was shot in the hand. Robinson was not hit.

At trial, Minor described Robinson as "really aggressive," "hella aggressive," and "super aggressive" in his stare as Long and Minor approached the store, and in his tone while speaking with Long. Minor testified that in street gang culture, the stare that Robinson gave Long was like, "'[w]hat's up? You're looking at me like we got a problem.'" He also testified that in street gang culture this kind of stare makes the person being stared at think, "[w]hy are you staring at me? You must think I am an enemy, or something."

---

[4] The prosecution's theory of the case was that Holland was the shooter. At trial, defense counsel argued that Holland was not the shooter. Whether or not Holland was the shooter is not relevant to the issues on appeal, so we do not recite the evidence relevant to this question.

4

According to Robinson's testimony at trial, Long came up to him and said "what's up" and asked Robinson where he was from. Robinson responded by asking Long where he was from. Long replied that he was from "Thug Family." Long then again asked Robinson where he was from in a "relaxed and cool" manner. It was only after Robinson responded that he was from a different street gang than Long was from that Robinson testified the conversation "turned up a notch." According to Robinson, Long then said "this is my city." At this point, Robinson "got turned up too," became "angry" and "livid," and was "ready to box." Robinson responded to Long by also stating, "[t]his is my city." Based on his experience as a gang member, Robinson thought there was going to be a fight.

At this point, according to Minor, both Long and Robinson were using "loud" voices. Minor testified that Long and Robinson were "face to face" and Robinson was being "disrespectful." Minor thought Long might fight Robinson, stating "I thought he was going to fire him. I thought he was going to sock him—we would have kicked their ass."

Long then turned his back on Robinson, and Minor heard Long call Robinson a derogatory name. Minor also saw Long make a hand gesture when he turned his back, which Minor interpreted as "fanning [Robinson] off."

An uninvolved witness also saw and heard the interaction between Long and Robinson. This same witness saw Long waive his arm, and then a man holding a gun get out of the backseat of the car. The witness stated that he saw Long, "waiving his hand telling the guy to come back out from the back seat of the car," and that as soon as Long raised his hand, the person in the car immediately got out, like Long was "telling him to get out of the

5

car or something like that."  The man who had been in the back seat of the car then ran toward the area where Robinson, Long, and Minor were standing and began shooting.  At trial, this same uninvolved witness identified Holland as the shooter.  Security camera footage also showed Long raising his hand.

According to Detective Jackson, the prosecution's gang expert, when one gang member asks another where he is from and the answer shows the gang member is a "potential rival, then an attack can occur."  Detective Jackson explicitly agreed with testimony by Minor that any confrontation with a perceived gang enemy could lead to a fight.  Detective Jackson further testified that unless one of the gang members backs down, "there will be a fight, a stabbing or shooting, and someone will get killed over it."

Minor testified that after the shooting, Minor, Long, and Holland ran back to the car and drove away.  Minor demanded to know why Holland had fired the gun, and Holland explained that he was defending Long and Minor.  Specifically, Holland told Minor, "Shit, I thought he was in it." Minor explained at trial that this meant that Holland said he was "defending us."  Minor also told the jury that Holland apologized by saying, "my bad."

Minor, Long, and Holland drove to a McDonald's restaurant, where Holland "kept repeating, the whole time, 'I thought they was into it.  I thought they was into it.  They [*sic*] my homies.' "  Minor testified that he thought the statement by Holland that they were "into it" meant that Minor and Long were "into a situation, into an argument, [or] a confrontation."

Andrea Berganza Martinez testified that either later the day of the shooting or the next day, several people, including Holland, were at her house and talking about the shooting.  They were joking and laughing but Holland was quiet.  Berganza

6

Martinez described Holland as, "[h]e was just quiet. I don't even know if he was fully there." "He was in his own zone." "He wasn't really mentally there." He was acting "weird[]."

Eight days after the shooting, Holland was arrested as the alleged shooter.

Holland was subsequently convicted of second degree murder of Smith and acquitted of first degree murder of Smith. The trial court instructed the jury on transferred intent, with the prosecution arguing that Holland intended to kill Robinson and shot Smith by mistake.

Holland was also convicted of assaulting Robinson with a firearm, but acquitted of attempted murder of Robinson.

## DISCUSSION

Holland argues that the trial court's failure to instruct the jury on voluntary manslaughter based on an imperfect defense of others was a violation of state law and his federal due process rights. The People argue that the instruction was not supported by substantial evidence, so there was no error. The People further assert that any error was harmless because the evidence of Holland acting in an imperfect defense of others was insubstantial.

We conclude that there was sufficient evidence to require the trial court to give an instruction on voluntary manslaughter. We also conclude that there is a reasonable probability Holland would have obtained a more favorable outcome if the instruction had been given. Accordingly, the error was not harmless under state law.

## I.    Standard of Review.

On appeal, we review de novo the trial court's failure to instruct on a lesser included offense.  (*People v. Cook* (2006) 39 Cal.4th 566, 596.)  We review the evidence in the light most favorable to the defendant.  (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30 (*Brothers*).)  "[U]ncertainty about whether the evidence is sufficient to warrant instructions should be resolved in favor of the accused."  (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 792, citing *People v. Tufunga* (1999) 21 Cal.4th 935, 944.)

## II.    Instructional Duty.

Under California law, a trial court has a sua sponte duty "to instruct fully on all lesser necessarily included offenses supported by the evidence."  (*People v. Breverman* (1998) 19 Cal.4th 142, 148–149 (*Breverman*), abrogated on another ground by amendment of § 189.)  This requirement is implicated when there is "substantial evidence of [the] lesser offense" such that the jury could have concluded the defendant committed the lesser offense rather than the greater offense.  (*Id.* at pp. 162, 177.)

"In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight."  (*Breverman*, *supra*, 19 Cal.4th at p. 177.)  "[C]ourts should not evaluate the credibility of witnesses, a task for the jury."  (*Id.* at p. 162.)

" 'Substantial evidence is evidence sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.' "  (*People v. Landry* (2016) 2 Cal.5th 52, 120 (*Landry*), quoting *People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)  Even evidence that is "less than convincing" may constitute substantial evidence and trigger the lesser included-

8

offense requirement.  (*People v. Turner* (1990) 50 Cal.3d 668, 690.)

## III.  Background on Homicide and Voluntary Manslaughter Based on Imperfect Defense of Others.

Murder is "the unlawful killing of a human being, or a fetus, with malice aforethought."  (§ 187, subd. (a).)  " 'A defendant who commits an intentional and unlawful killing but who lacks malice is guilty of . . . voluntary manslaughter.' " (*Breverman, supra*, 19 Cal.4th at p. 153, quoting § 192.)

Voluntary manslaughter is a lesser included offense of murder.  (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197 ["Lesser included offenses of first degree premeditated murder include second degree murder, voluntary manslaughter, and involuntary manslaughter"]; *Breverman, supra*, 19 Cal.4th at p. 154.)

"A killing committed because of an unreasonable belief in the need for self-defense is voluntary manslaughter, not murder." (*People v. Elmore* (2014) 59 Cal.4th 121, 129 (*Elmore*).) "[I]mperfect self-defense is not an affirmative defense, but a description of one type of voluntary manslaughter."  (*People v. Manriquez* (2005) 37 Cal.4th 547, 581 (*Manriquez*).)  A killing based upon an unreasonable belief in the need for self-defense obviates malice because malice cannot coexist with an actual belief that the lethal act was necessary to avoid death or serious bodily injury.  (*Ibid*, citing *People v. Beltran* (2013) 56 Cal.4th 935, 951.)

A trial court has a sua sponte duty to instruct on voluntary manslaughter as a lesser included offense of murder whenever there is evidence from which a reasonable jury could conclude that a manslaughter, but not a murder, was committed.

9

(*Elmore*, *supra*, 59 Cal.4th at p. 134; *Breverman*, *supra*, 19 Cal.4th at p. 162.)

"[S]ubstantial evidence of . . . unreasonable self-defense may exist, and the duty to instruct sua sponte may therefore arise, even when the defendant claims that the killing was accidental, or that the state[] of mind on which th[is] theory depend[s] w[as] absent . . . ." (*Breverman*, *supra*, 19 Cal.4th at p. 163, fn. 10.)  Thus, the requirement to instruct fully on all lesser necessarily included offenses supported by the evidence arises "regardless of the trial theories or tactics the defendant has actually pursued." (*Id.* at p. 162.)

## IV. There Was Substantial Evidence for the Jury to Conclude Holland Acted Without Malice Based on an Imperfect Defense of Others.

"[U]nreasonable self-defense involves a misperception of objective circumstances." (*Elmore*, *supra*, 59 Cal.4th at p. 134.) It is based on a "mistake of fact." (*Id.* at p. 136.)  It requires "an honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury . . . .  [I]t is most accurately characterized as an *actual* but unreasonable belief." (*Id.* at p. 134.)  This doctrine is narrow and applies only when the defendant has an actual belief in the need for self-defense and fears immediate harm.  (*Landry, supra,* 2 Cal.5th at pp. 97–98.)

The doctrine of imperfect self-defense also applies to the unreasonable belief in the need for self-defense of others. (*People v. Randle* (2005) 35 Cal.4th 987, 997, overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201; see also *People v. Trujeque* (2015) 61 Cal.4th 227, 270 [reaffirming *People v. Randle* for the proposition that the doctrine of imperfect self-defense applies to self-defense of others].)

10

We conclude that there is substantial evidence that Holland had an actual belief that he needed to defend Long and Minor from imminent great bodily injury or death. This evidence is not from Holland's own testimony, but it need not be. A defendant is not required to testify to his or her honest belief. (*People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1262, citing *People v. De Leon* (1992) 10 Cal.App.4th 815, 824.) The testimony of a single witness may constitute substantial evidence. (*People v. Steskal* (2021) 11 Cal.5th 332, 346 (*Steskal*), citing *People v. Lewis* (2001) 25 Cal. 4th 610, 646.) As we previously held, it is "for the jury sitting as the trier of fact to decide whether appellant actually feared serious injury or death" based on " '*all the relevant facts.*' " (*People v. Vasquez* (2006) 136 Cal.App.4th 1176, 1179 (*Vasquez*), citing *In re Christian S.* (1994) 7 Cal.4th 768, 783, italics added.)

There is evidence that the interaction between Robinson and Long was escalating into a fight. There is also evidence that Holland could see, and possibly hear, the interaction, so was aware of the escalation. Robinson was acting "super aggressive." Robinson and Long were using "loud" voices. Robinson's tone was "aggressive." When Long waived his hand, Holland immediately got out of the car and ran towards the store shooting a gun, like Long was "telling him to get out of the car or something like that." Video footage showed the person in the back seat of the car getting out, standing next to the car and looking towards the store, and then running towards the store shooting. A reasonable juror could have determined from this evidence that Holland was watching the interaction between Robinson and Long, may have heard it as well, and viewed Long's hand as a summons for help.

The evidence regarding gang interactions in general, together with evidence of the escalating confrontation, supports an actual, albeit mistaken, belief by Holland that he needed to defend Long and Minor from imminent injury or death. Robinson himself testified he was "angry," "livid," and "ready to box." Minor testified that he thought Long was about to fight Robinson. Detective Jackson testified that when one gang member asks another where he is from and the answer shows he a "potential rival, then an attack can occur." Detective Jackson further stated that unless one of the gang members backs down, "there will be a fight, a stabbing or shooting, *and someone will get killed over it*." (Italics added.)

Holland's statements after the shooting also suggest that he believed that he needed to defend Long and Minor. Remarks from after the event can be evidence of an actual belief at the time of the event. (*Steskal, supra*, 11 Cal.5th at p. 346.) Right after the shooting Holland kept repeating, " 'I thought they was into it. I thought they was into it. They [*sic*] my homies.' " Minor understood this to mean that Holland thought he was defending Long and Minor.[5]

Holland's actions shortly after the shooting also suggest that he acted with a mistaken belief in the need for self-defense of Long and Minor. A defendant's actions after an offense are relevant to his or her mental state during the offense. (*People v. Thompson* (2010) 49 Cal.4th 79, 113 ["[P]ostcrime actions and

---

[5]  The People argue that Minor's interpretation of Holland's statement should not be considered. They cite no legal authority for this contention. It is for the jury to decide what Holland meant by this statement based on all the facts. (See *Vasquez, supra*, 136 Cal.App.4th at p. 1179.)

statements can support a finding that defendant committed a murder for which his specific mental state is established by his actions before and during the crime"].) Berganza Martinez testified that Holland was acting "weird[]." While others discussed the shooting, Holland was "just quiet. I don't even know if he was fully there." "He was in his own zone." "He wasn't really mentally there." (Cf. *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1267 ["Defendant's behavior following the shooting is of someone horrified and distraught about what he had done, not someone who had just fulfilled a preconceived plan"].) While there may be multiple explanations for why Holland behaved as he did after the shooting, one explanation arguably supported by the evidence is that he felt bad that he had just needlessly killed someone based on his misunderstanding of the circumstances.

The People's reliance on *People v. Simon* (2016) 1 Cal.5th 98 to argue the evidence was insufficient to warrant an instruction on voluntary manslaughter is unpersuasive. In *Simon*, the defendant killed a member of a rival gang after the two got into a verbal altercation. (*Id.* at pp. 108–109.) The factual similarities end there. Our Supreme Court found no error in failing to instruct the jury on imperfect self-defense in *Simon* because there was insufficient evidence that the defendant believed he needed to act in self-defense. (*Id.* at p. 132.) In *Simon*, the victim said he was from a rival gang, and then the defendant asked someone for a gun and began cursing at the victim. (*Id.* at p. 133.) While the defendant claimed he then calmed down in the bathroom, the evidence belied this assertion. The evidence showed the defendant walking over to another rival gang member and elbowing him in the face. (*Ibid.*) Then the

defendant threatened to shoot a person who intervened. The defendant began to argue once again with the victim and shot him. (*Ibid.*) The defendant did not "point to any evidence indicating that [the victim] was the aggressor. Nor does Simon present evidence that he ever perceived that [the victim]—who was unarmed—posed a risk of imminent peril." (*Ibid.*) Citing its decision in *People v. Manriquez, supra,* 37 Cal.4th 547, where the record was similarly " 'devoid of evidence' " supporting the defendant's subjective fear, the Supreme Court in *Simon* upheld the trial court's refusal to instruct on imperfect self-defense. (*Simon*, *supra*, at p. 133, citing *Manriquez*, *supra*, at p. 581.)

Unlike in *Simon* and *Manriquez*, the record is not "devoid of evidence" supporting Holland's actual belief that he needed to protect Long and Minor from imminent harm. As detailed *ante*, there is evidence that the confrontation between Robinson and Long was escalating into a fight. There is also evidence that Holland exited the car right after Long held up his hand. A reasonable juror could have concluded that Holland viewed Long's hand movement as an indication that Long needed his immediate help from imminent harm. There is also evidence that this kind of gang confrontation would likely escalate. The gang expert testified that someone would get killed if one party did not back down. There is no evidence that Robinson backed down, or that Holland had reason to believe that he had. Moreover, Holland's statements and actions after the shooting, viewed in the light most favorable to Holland[6] (*Brothers*, *supra*, 236

---

[6] It is certainly conceivable a jury on remand, employing a neutral view of the evidence, could agree with the People that

14

Cal.App.4th at p. 30), suggest that he acted with an actual belief in the need for self-defense of his fellow gang members.

The People point out that the doctrine of imperfect self-defense "may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical attack or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified." (*People v. Enraca* (2012) 53 Cal.4th 735, 761.) The People argue that Long provoked the confrontation with Robinson, and thus Holland cannot claim imperfect self-defense of others. We reject this contention.

First, the record is not clear that Long instigated the confrontation, at least without some responsibility from Robinson. Minor testified that Robinson stared aggressively at Long and Minor as they approached the store, as if to say, " 'What's up? You're looking at me like we got a problem.' "

Second, whether Robinson or Long provoked the confrontation is irrelevant. The premise underlying the rule that a defendant cannot incite a fight and then claim an actual belief in the need for self-defense is that after a victim lawfully attacks back in self-defense, the instigator cannot reasonably claim that he or she counterattacked in self-defense. (See *Vasquez*, *supra*, 136 Cal.App.4th at p. 1180, discussing *Randle*, *supra*, 35 Cal.4th at p. 991.) This premise is inapplicable to the facts here. Holland did not start a fight. Robinson did not use force against Long, to which Holland then counterattacked. Holland may have reacted to Long's hand motion by shooting because he harbored an actual

---

Holland did not actually believe his intervention was necessary. But on appeal we are obligated to consider the evidence in a very different light that favors Holland.

15

belief in the need to defend Long and Minor from imminent, significant bodily harm or death.[7]  That was the relevant question.  "It was for the jury sitting as the trier of fact to decide whether [Holland] actually feared serious injury or death . . . . [Citations.]"  (*Vasquez, supra*, 136 Cal.App.4th at p. 1179.)

The People's reliance on *People v. Franco* (1994) 24 Cal.App.4th 1528, is similarly misplaced.  In *Franco*, the victim possibly made a hand movement that could have been viewed as threatening to the defendant.  This hand movement was made after the defendant, who went out searching for the victim specifically, pointed a rifle at the victim and shouted a derogatory phrase about the victim's gang.  (*Id.* at pp. 1540–1541.)  The Court of Appeal concluded that any hand movement by the victim was insufficient by itself to warrant an imperfect self-defense instruction when the defendant subsequently shot and killed the victim.  (*Ibid.*)

In sum, viewing the evidence in the light most favorable to Holland, a reasonable juror could have concluded that Holland acted upon an actual, albeit mistaken, belief that he needed to defend Long and Minor from imminent great bodily harm or death.  Any uncertainly about whether the evidence was sufficient to warrant the jury instruction must be resolved in favor of Holland.  (*People v. Vasquez, supra*, 30 Cal.App.5th at

---

[7]      If Long had called out to Holland, "Help, this rival gang member Minor is about to attack me with potentially lethal force unless you stop him," the basis for an imperfect self-defense instruction would be clear.  What Holland observed, arguably, is the equivalent of such a call for help.

p. 792.) Accordingly, the trial court was required to instruct on the lesser included offense of voluntary manslaughter.

## V. The Error Was Prejudicial Under State Law

In a noncapital case, the erroneous failure to instruct on a lesser included offense is typically an error of state law. (*People v. Rogers* (2006) 39 Cal.4th 826, 867–868 (*Rogers*); see also *Gonzalez, supra*, 5 Cal.5th at p. 198 ["[N]either we nor the United States Supreme Court recognizes a . . . duty to instruct on lesser included offenses under federal constitutional law—at least in noncapital cases"] (Italics omitted.).)[8]

---

[8] In addition to the standard for determining prejudice for state-law error in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), there is a standard for assessing prejudice when the error violates the federal Constitution. This is the requirement that harmlessness must be found beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18. When the defense requests the instruction, the refusal to instruct on a lesser included offense may also violate the federal constitutional requirement that the courts afford every criminal defendant " 'a meaningful opportunity to present a complete defense.' " (*Crane v. Kentucky* (1986) 476 U.S. 683, 690; *Rogers, supra,* 39 Cal.4th at p. 868, fn. 16.) This standard is premised on the defendant's right to a meaningful opportunity to present a complete defense guaranteed by the Fourteenth Amendment to the United States Constitution. (*Rogers, supra,* 39 Cal.4th at pp. 871–872.)

Here, defense counsel never requested the jury instruction. Defense counsel's theory of the case was that Holland was not the actual killer. It does not appear that the federal constitutional right to present a complete defense was implicated by the failure

17

Prejudice resulting from a trial court's failure to instruct on a lesser included homicide offense is analyzed under the harmless error test in *Watson, supra,* 46 Cal.2d at page 836. (*Gonzalez, supra,* 5 Cal.5th at p. 195.) Under this standard, we must reverse if there is a reasonable probability that the defendant would have obtained a more favorable outcome if the instruction had been given. (*Ibid.*) A "reasonable probability" in this context "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*. [Citations.]" (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.) The error is prejudicial when it is " 'probably sufficient to undermine confidence in the outcome.' " (*Ibid.*, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 669.)

We conclude that there is a reasonable chance that at least one juror would have voted to convict Holland of voluntary manslaughter based on the imperfect defense of others if the jury had been so instructed, as explained below.

### A. The evidence of Holland's malice was not particularly strong.

First, the evidence of Holland's malice was not particularly strong, as evidenced by the jury's own actions. "The prejudice arising from the failure to instruct on lesser included offenses and defenses creates a specific kind of risk—that the jury, faced with an all-or-nothing choice . . . convicted defendant[] [of the

---

to give the jury instruction on voluntary manslaughter, since it was not requested.

Regardless, we need not determine whether the failure to instruct here was an error of federal constitutional law because we determine that there was an error under state law, and that error was not harmless.

18

higher offense] even though the prosecution failed to satisfy its burden." (*Gonzalez, supra*, 5 Cal.5th at p. 191.) The duty to instruct on the lesser included offense ensures that the jury's " 'verdict is no harsher . . . than the evidence merits' " and prevents the jury from facing the all or nothing choice of " ' "conviction of the stated offense on the one hand, or complete acquittal on the other." ' " (*Id.* at p. 196.) A jury might otherwise be tempted to convict of an offense greater than that supported by the evidence rather than acquit altogether. (*Id.* at pp. 196–197; *People v. Tinajero* (1993) 19 Cal.App.4th 1541, 1547.)

The jury faced this all-or-nothing situation. The jury acquitted Holland of first degree murder of Smith, and instead convicted him of second degree murder.[9] At trial, testimony by Minor and a witness identified Holland as the shooter. No other possible shooters were identified in the evidence. Thus, the jury may have not wanted to acquit Holland, but its only other option was to convict Holland of second degree murder. In addition, Holland was charged with attempted murder of Robinson, but the jury acquitted and instead convicted him of assaulting Robinson with a firearm.

The jury's verdicts suggest that the jury may have harbored doubts about Holland's state of mind as to malice. As we said in another case when a jury acquitted the appellant of first degree murder and instead convicted him of the lesser included offense of second degree murder, "[t]he jury's verdict implies it found appellant formed his intent to kill only under the immediate circumstances of the confrontation in the alley, which

---

[9] This was based on a jury instruction of transferred intent that Holland intended to shoot Robinson but shot Smith instead.

19

is consistent with second degree murder *but is also equally consistent with voluntary manslaughter arising from imperfect self-defense*.  Because the evidence could have allowed a reasonable jury to conclude appellant believed his life was in imminent peril . . . the murder conviction cannot stand and appellant must be retried." (*Vasquez, supra,* 136 Cal.App.4th at p. 1180, italics added.)  Here, the failure to instruct on the lessor included offense of voluntary manslaughter was similarly reversible error, particularly in the context of a jury that acquitted Holland of some of the charges.  (Cf. *People v. Brown* (2016) 245 Cal.App.4th 140, 155–156 [holding that failure to give lesser included offense instruction was reversible error where jury convicted on a different lesser included offense, which showed the jury had doubts about the prosecution's case and "a readiness to scrutinize the evidence, draw its own independent conclusions . . . of culpability, and convict on lesser charges than the prosecutor requested"].)

Second, the evidence of voluntary manslaughter based on imperfect self-defense of others is not "very weak" as the People argue.  We disagree with the People for reasons discussed *ante*.[10]

---

[10]    The People also argue that the jury's finding on the gang enhancement is at "odds with a notion that appellant killed in an honest belief in the need to protect against imminent harm," so any error was harmless.  The People do not elaborate nor cite any legal authority in support of this claim.  Both murder and voluntary manslaughter are defined as "violent felon[ies]" under section 667.5, subdivision (c)(1).  Both are crimes to which the gang enhancement applies because the gang enhancement applies to "violent felon[ies]" under section 186.22, subdivision

In sum, at least one reasonable juror could have found that the evidence supported finding that Holland had an actual belief in the need for self-defense of Long and Minor against imminent and great bodily injury or death.  We therefore conclude it is reasonably probable Holland would have achieved a better result if the jury had been properly instructed.  Holland's convictions must be reversed.

## DISPOSITION

Except with respect to the counts upon which the jury returned a verdict of acquittal, the judgment is reversed and the matter is remanded for a new trial.

HARUTUNIAN, J.[*]

I concur:


STRATTON, P. J.

---

(b)(1)(C).  Thus, both a conviction for voluntary manslaughter and one for murder carries the same gang enhancement under section 186.22, subdivision (b)(1)(C) of an additional term of 10 years.

[*]      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Charles Eric Holland*
**B306813**
**GRIMES, J., Dissenting.**

I respectfully dissent.  I do not believe it was error for the trial court to not instruct on imperfect self-defense because I do not think there was evidence to warrant such an instruction.

"A trial court must instruct a jury regarding lesser included offenses ' " 'whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury.  [Citations.]  "Substantial evidence" in this context is " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[]' " that the lesser offense, but not the greater, was committed.' " ' "  (*People v. Landry* (2016) 2 Cal.5th 52, 98 (*Landry*).)

The doctrine of imperfect self-defense, or defense of others, applies only in limited factual situations.  Where there is substantial evidence the defendant killed another person because the defendant actually, but unreasonably, believed he, or another person, was in *imminent danger of death or great bodily injury*, the jury should be instructed on imperfect self-defense, whether the defendant asks for the instruction or not.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 581 (*Manriquez*).)

I do not think there was any evidence of imminent danger of death or great bodily injury.  The confrontation defendant Charles Eric Holland observed that resulted in the fatal shooting, was between his fellow Hawthorne Thug Family gang member, William Long, and a rival gang member, Antwoine Robinson. The only behavior attributed to Robinson in the majority is that he gave Long an "aggressive" stare as Long was walking toward a

1

liquor store, he responded to Long's question asking where he was from by asking Long where he was from, and responded to Long's statement "this is my city" by saying "[t]his is my city." That is pretty mild stuff, even if you throw in that the two men appeared angry and confrontational.  Long then turned his back on Robinson to walk away—not an act of one who thinks he is about to be attacked with lethal force.  Then, with his back to Robinson, Long dismissively waved his hand in the air and hurled an insult at Robinson, calling him a derogatory name, supporting the inference he was "fanning off" or blowing off Robinson, as attested to by Saladin Minor, another Hawthorne Thug Family gang member standing nearby.  The opinion does not state Robinson responded at all to the insult or hand gesture.

There is no evidence any weapons were brandished by anyone.  Yet, in response solely to this verbal argument, one that Long had already started to walk away from, defendant got out of the car and ran toward Robinson and Long shooting his gun multiple times and fatally wounding Jacare Smith, who was standing near Robinson.

I do not think there is any evidence that reasonably supports an inference defendant actually believed lethal force was necessary to defend Long.  I do not think there is any evidence that reasonably supports an inference defendant feared immediate death or great bodily injury to Long.  Long's hand gesture, however it may have been understood—even if understood as a summons for help—does not support an inference that defendant believed Robinson was about to use deadly force, or any force, against Long; at least, not without any evidence that Robinson wielded a weapon, or verbally threatened bodily harm;

or lunged toward Long as he walked away.  There was no such evidence.

Landry instructs that "[t]he belief required to support imperfect self-defense is that the defendant 'was in imminent danger of death or great bodily injury.'  [Citation.]  *This doctrine is a ' "narrow" ' one* and 'will apply only when the defendant has an actual belief in the need for self-defense and only when the defendant fears immediate harm that " ' "*must be instantly dealt with.*" ' " ' "  (*Landry, supra*, 2 Cal.5th at pp. 97–98, first italics added; accord, *Manriquez, supra*, 37 Cal.4th at p. 581; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 [" 'The defendant's fear must be of imminent danger to life or great bodily injury.' "].)

The evidence here simply does not comport with *Landry*.  The evidence supports a reasonable inference that Long got into a verbal joust with Robinson that was loud and momentarily confrontational but did not progress further.  The evidence that defendant acted "weird[]" and "quiet" after the shooting is not akin to behavior that he was " 'horrified and distraught' " at what he had done, as the majority suggests.  (Maj. opn., *ante*, at p. 13, quoting *People v. Boatman* (2013) 221 Cal.App.4th 1253, 1267.)  It supports a reasonable inference of remorse perhaps, but that was more likely due to defendant realizing he screwed up by killing without his gang's support or that he feared being arrested.

That we must resolve uncertainties in favor of the accused does not assist defendant here.  Nor does the fact that an expert testified that interactions between rival gang members are fraught and often lead to violence.  There simply is no evidence to support the instruction.  If this evidentiary record merits an imperfect self-defense instruction, then every gang member who

3

purports to defend a fellow gang member engaged in a verbal argument by rushing in with guns blazing will be justified in asking for and obtaining an imperfect self-defense instruction. That is not what the law dictates.

I would affirm defendant's conviction for second degree murder and three counts of assault.  I would reverse the gang enhancement and remand for further proceedings in light of the passage, while this appeal was pending, of Assembly Bill No. 333 (2021–2022 Reg. Sess.).  (Stats. 2021, ch. 699.)


GRIMES, J.

4