[No. B175639. Second Dist., Div. Eight. Feb. 15, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
VICENTE VASQUEZ, Defendant and Appellant.

## COUNSEL

Thomas T. Ono, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RUBIN, J.**—Vicente Vasquez appeals from the judgment following his conviction of second degree murder. Because the court refused to instruct the jury on imperfect self-defense, we reverse and remand for retrial.

### FACTS AND PROCEDURAL HISTORY

Vicente Vasquez was charged with murdering his cousin, Ramon Arechiga. He pleaded not guilty and was tried by jury. At trial, one of appellant's

cousins testified during the People's case-in-chief that appellant admitted he killed Arechiga. According to the cousin, appellant said he invited Arechiga to a party, where appellant asked Arechiga to join him and some of appellant's friends in a nearby alley. In the alley, appellant, who was confined to a wheelchair, confronted Arechiga about Arechiga's reportedly having raped appellant's deceased younger brother years earlier. Reacting to appellant's accusation, Arechiga lunged at appellant and began to choke him. In response, appellant pulled out a gun and repeatedly shot Arechiga, killing him.

The jury acquitted appellant of first degree murder, but convicted him of murder in the second degree. The court sentenced appellant to state prison for 40 years to life. This appeal followed.

## DISCUSSION

■ Appellant asked the court to instruct the jury on imperfect self-defense. Imperfect self-defense is the actual, but unreasonable, belief in the need to resort to self-defense to protect oneself from imminent peril. (*In re Christian S.* (1994) 7 Cal.4th 768, 773, 783 [30 Cal.Rptr.2d 33, 872 P.2d 574]; *People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1270 [62 Cal.Rptr.2d 345].) When imperfect self-defense applies, it reduces a homicide from murder to voluntary manslaughter because the killing lacks malice aforethought. (*People v. Blakeley* (2000) 23 Cal.4th 82, 87–88 [96 Cal.Rptr.2d 451, 999 P.2d 675]; *People v. Flannel* (1979) 25 Cal.3d 668, 674 [160 Cal.Rptr. 84, 603 P.2d 1], disapproved on another point in *In re Christian S., supra,* at p. 777.)

The court stated two reasons for refusing to instruct on imperfect self-defense. First, the court found as a factual matter that appellant did not believe he was in imminent peril from Arechiga's attack. The court said, "there's no statements in [appellant's] confession or statement, there's no physical evidence, there's no discussion, there's nothing that suggests that your client felt he was not [*sic*] in danger . . . . [¶] . . . How could he have felt imminent harm when he's holding a gun and someone is approaching him with their hands?"[1]

---

[1] It is unclear what the court meant in saying appellant was "holding a gun." If the court meant to suggest appellant was pointing a gun, or that his gun was even visible, when Arechiga initially lunged toward him, the record does not support the court. The only evidence on the point was the testimony of appellant's cousin, which was appellant drew his gun after Arechiga started to choke him.

The record does not support the court. The prosecution's chief witness against appellant testified Arechiga was choking appellant when appellant drew his gun and shot Arechiga. It was for the jury sitting as the trier of fact to decide whether appellant actually feared serious injury or death from being choked. (*People v. Barton* (1995) 12 Cal.4th 186, 201 [47 Cal.Rptr.2d 569, 906 P.2d 531]; *In re Christian S., supra,* 7 Cal.4th at p. 783 ["whether the defendant actually held the required belief is to be determined by the trier of fact based on all the relevant facts."].) That appellant had a gun to rebuff Arechiga's attack does not mean appellant could not have believed his life was in peril—in fact, a defendant claiming imperfect self-defense will *always* have had the means to rebuff the victim's attack, or else the homicide would not have occurred. In our holding it was the jury's role to determine appellant's state of mind, we do not ignore the plentiful evidence suggesting appellant's criminal intent in the alley.[2] We hold only that it was for the jury, not the judge, to infer what appellant believed if it accepted the evidence that Arechiga attacked appellant.

The second reason the court refused to instruct on imperfect self-defense was its conclusion that appellant had created the need to defend himself by luring Arechiga to the alley to confront him. The court said, appellant "set up the situation where [Arechiga] then sought to protect himself. That is, he told [Arechiga]: 'I'm going to kill you.'[3] [¶] Anybody else in that situation, with somebody else's friends, having that person tell them that: 'I know you molested my brother,' is obviously going to respond in some way. He set that situation up. He put him in an alley. He put a gun on him, and he had his friends there."

The court's second reason interpreted imperfect self-defense too narrowly, a misinterpretation respondent echoes in arguing the defense is not available to a defendant who "induces a quarrel that leads to an adversary's attack." Neither the court nor respondent is precisely correct. Imperfect self-defense does not apply if a defendant's conduct creates circumstances where the victim is *legally* justified in resorting to self-defense against the defendant. (*In re Christian S., supra,* 7 Cal.4th at p. 773, fn. 1 [imperfect self-defense unavailable when defendant "has created circumstances under which his adversary's attack or pursuit is legally justified"].) But the defense is available

---

[2] On the record before us, a reasonable jury could have concluded that in creating the situation appellant intended to kill all along. A reasonable jury could also have concluded that appellant only intended to confront Arechiga with the accusation of rape and it was only after Arechiga attacked him that appellant formed the intent to kill.

[3] The record does not show appellant ever said "I'm going to kill you." Instead, the court appears to be putting into words the unspoken message it believed appellant intended to convey to Arechiga when appellant invited Arechiga to the alley to accuse him of raping appellant's late brother.

when the victim's use of force against the defendant is unlawful, even when the defendant set in motion the chain of events that led the victim to attack the defendant.

*People v. Randle* (2005) 35 Cal.4th 987 [28 Cal.Rptr.3d 725, 111 P.3d 987] (*Randle*), illustrates the distinction. In that case, the defendant and his accomplice were burglarizing a car when a relative of the car's owner came upon them. (*Id.* at p. 991.) The defendant and his accomplice fled, but the relative and car's owner chased them down and began to beat the accomplice severely. To save his accomplice from serious injury or even death, the defendant pulled out his gun and killed the car owner's relative. (*Id.* at p. 992.)

On review, the Supreme Court held the defendant was entitled to a jury instruction on imperfect defense of another. (*Randle, supra,* 35 Cal.4th at p. 993.) As in our case, both the defendant in *Randle* and appellant were up to no good—plainly so in *Randle* who was obviously committing a crime, and arguably so with appellant when he invited Arechiga to the alley. And both the defendant in *Randle* and appellant generally set in motion the circumstances that led their victims to attack them. (*Id.* at pp. 1001–1003.) But in each case, the evidence suggested the victims, not the defendants, used unlawful force first. Accordingly, appellant was entitled to assert imperfect self-defense.

 The court's erroneous refusal to instruct on imperfect self-defense was not harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The murder charge against appellant was not airtight. Jury deliberations spanned three days for an uncomplicated one-count case turning on appellant's state of mind when he fired his gun. Despite his being accused of first degree murder, the jury acquitted appellant of that charge, meaning it found appellant did not go to the alley with a willful, deliberate, and premeditated plan to kill his cousin. Instead, it convicted him of the lesser included offense of second degree murder. The jury's verdict implies it found appellant formed his intent to kill only under the immediate circumstances of the confrontation in the alley, which is consistent with second degree murder but is also equally consistent with voluntary manslaughter arising from imperfect self-defense. Because the evidence could have allowed a reasonable jury to conclude appellant actually believed his life was in imminent peril as Arechiga choked him, the murder conviction cannot stand and appellant must be retried.[4]

---

[4] In light of our holding, we need not address whether the record supports an instruction on manslaughter based on provocation. Because the facts that may be developed at any retrial may differ from those before us, that issue is better left to the trial court in the first instance. We also do not address the defense of self-defense (as opposed to *imperfect* self-defense) as appellant did not raise it.

## DISPOSITION

The judgment is reversed. The matter is remanded for retrial.

Cooper, P. J., and Flier, J., concurred.