FYBEL, J.,
Dissenting. — I respectfully dissent. The conviction of Armando Apolinar Ramirez (Armando) for the first degree murder of Ruben Rivera *954 should be affirmed. The jury was properly instructed, without objection by any party, on both perfect and imperfect self-defense based on legal principles affirmed by the California Supreme Court in People v. Enraca (2012) 53 Cal.4th 735, 761-762 [137 Cal.Rptr.3d 117, 269 P.3d 543] (Enraca) and People v. Hinshaw (1924) 194 Cal. 1, 26 [227 P. 156] (Hinshaw). The jury thereafter found Armando shot and killed Rivera and was guilty of premeditated murder. There is no dispute substantial evidence supported the jury’s decision. In brief, the majority and I disagree on the answer to the basic question of what is California law on subjects covered by the instructions given in this case.
The majority opinion reverses Armando’s conviction on the ground the trial court erred by instructing the jury with an unmodified version of CALCRIM No. 3472. CALCRIM No. 3472 is entitled “Right to Self-Defense: May Not Be Contrived” and states: “A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force.” By its express language, CALCRIM No. 3472 does not apply to every person who initiates a fight and subsequently claims self-defense. Instead, it applies to a subset of individuals who not only instigate a fight, but do so with the specific intent that they contrive the necessity for their acting thereafter in “self-defense,” and thus justify their further violent actions. In other words, this instruction applies, and the right to self-defense is lost, only if an initial aggressor commences combat for the intended purpose of provoking a violent reaction so that he or she can then retaliate with further violence, whether deadly force or nondeadly force, under the guise of self-defense. The defendant’s intent is measured at the time the fight or quarrel is provoked.
In Enraca, supra, 53 Cal.4th at page 761, the California Supreme Court held that CALJIC No. 5.55, the predecessor to CALCRIM No. 3472, correctly stated the law. CALJIC No. 5.55, approved in Enraca, provided: “ ‘The right of self-defense is not available to a person who seeks a quarrel with the intent to create a real or apparent necessity of exercising self-defense.’ ” (Enraca, supra, at p. 761.) CALCRIM No. 3472 is more favorable to a defendant than CALJIC No. 5.55 because the former instruction specifically required that the defendant’s act of provoking a fight or quarrel be made with the intent to create an excuse to “use force” before the defendant would be precluded from asserting the right of self-defense.
In People v. Hinshaw, supra, 194 Cal. at page 26, the California Supreme Court approved an instruction as “correctly stat[ing] the recognized principle of law ‘that self-defense is not available as a plea to a defendant who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance or fault, to create a real or apparent necessity for making a felonious assault.’ ”
*955 In my view, given the legal principles articulated in Enraca and Hinshaw, CALCRIM No. 3472 accurately states sound legal precedent.
In Enraca, the Supreme Court also approved the use of CALJIC No. 5.17, through which “the jury was also instructed that the principle of imperfect self-defense ‘is not available, and malice aforethought is not negated, if the defendant^] by his unlawful or wrongful conduct[,] created the circumstances which legally justified his adversary’s use of force.’ ” (Enraca, supra, 53 Cal.4th at p. 761, italics added.) In the instant case, the jury was given a special instruction containing the same substance as CALJIC No. 5.17; it stated: “The principle of imperfect self-defense may not be invoked by a defendant who, through his own wrongful conduct (e.g. the invitation of a physical assault or the commission of a felony) has created circumstances under which his adversary’s attack or pursuit is legally justified.”
Accordingly, both CALCRIM No. 3472 and CALJIC No. 5.55 contain a scienter requirement. Neither the special instruction, quoted ante, nor its counterpart CALJIC No. 5.17, ante, contains any scienter requirement. Instead, they both limit the loss of the right to claim imperfect self-defense to an adversary’s use of force that is legally justified, e.g., the adversary’s use of force in his or her own self-defense against the initial aggressor’s provocation. Hence, if the initial aggressor simply provokes a fight using nondeadly force — without an intent to create a larger conflict for the purpose of covering for him or her to engage in further violence in the name of self-defense — he or she is not precluded from claiming self-defense or imperfect self-defense in responding to the adversary’s response of deadly force.
Here, as in Enraca, supra, 53 Cal.4th 735, instructing the jury with CALCRIM No. 3472 was supported by the record because substantial evidence showed Armando, along with Victor Espudo Ramirez, Jr. (Victor), and Steven Arevalos, not only provoked the fight with rival gang members, but Armando, for his part, did so with the intent of creating a circumstance (a sudden fistfight between rival gang members) in which he might have the excuse of self-defense to use his gun against his adversaries. Specifically, substantial evidence showed (1) Armando, Victor, and Arevalos agreed to confront a rival gang whose members had repeatedly driven by Armando’s house, sometimes flashing gang signs and guns and even shooting at Armando’s house; (2) Armando initially brought a gun to take with him but agreed to leave it at home when Arevalos told him not to bring it; (3) Armando pretended he had put the gun back inside his house before they drove to confront rival gang members, but he actually had secreted it in his sweatshirt pocket; (4) during the drive, Victor told Armando, “[i]f you have a gun, you better use it and not be a bitch”; (5) Armando, Victor, and Arevalos located and then walked up to a group of rival gang members whom they “hit up” by *956 asking, “[w]here you from?”; (6) expert witness testimony explained that such “hit up[s]” usually result in some ldnd of violence “at the minimum, a fistfight”; (7) a fistfight broke out during which Armando fatally shot Rivera after, Armando claimed, he saw Rivera with what looked like a gun in his hand; and (8) no gun was found on or even near Rivera.
As noted by the majority, Armando testified that he did not set out that evening intending to shoot anyone. Accordingly, the evidence supported the trial court in the instant case instructing the jury with CALCRIM No. 3472 and also with CALCRIM No. 3471, which as discussed post, addresses self-defense in the context of mutual combat or initial aggressors. (The jury was also instructed on imperfect self-defense with CALCRIM No. 571 and the special instruction discussed ante).
Having been so instructed, the jury was entitled to conclude, under CALCRIM No. 3472, that Armando did not have the right to claim self-defense in his killing of Rivera because Armando not only provoked the fistfight with the rival gang members, he specifically intended, through the provoked fistfight, to have the contrived opportunity to use further force in the ensuing fracas. The jury was further entitled to conclude that Armando took advantage of that opportunity and killed Rivera. Quite simply, under these circumstances, the jury was entitled to disbelieve Armando’s testimony that he did not set out that night intending to shoot anyone.
Given the correctness of the instructions and the evidence, it is justified and logical that the trial court, defense counsel, and the prosecutor all agreed the instructions could be given to the jury. Courts statewide often face the fact pattern of this case: an armed gang member travels to hit up a rival gang with the intent to use force, a gang member then shoots a rival gang member, and the shooter claims afterwards that he or she only shot because the shooter thought his or her adversary was reaching for a gun. The majority thus leaves trial courts in an untenable position: a CALCRIM instruction is proposed, no one objects, all counsel agree it can be given, the evidence supports the instruction, the California Supreme Court has twice approved essentially the same instruction, and yet it is reversible error to give the instruction.
The majority does not explain how CALCRIM No. 3472 might be modified for the majority to conclude the instruction accurately states the law as it would apply to the facts of this case. The majority opinion’s final paragraph begins: “In essence, the instructions and the prosecutor’s argument erroneously required the jury to conclude that in contriving to use force, even to provoke only a fistfight, defendants entirely forfeited any right to self-defense.” (Maj. opn., ante, at p. 953.) It appears the majority would modify CALCRIM No. 3472 to do no more than restate principles that were given to this jury in the form of CALCRIM No. 3471.
*957 Specifically, CALCRIM No. 3471 instructed the jury about the right to self-defense in the context of mutual combat or a conflict in which the defendant is the initial aggressor as follows: “A person who engages in mutual combat or who starts a fight has a right to self-defense only if: [][] 1. He actually and in good faith tried to stop fighting; ['][] AND ['][] 2. He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting; [¶] AND [¶] 3. He gave his opponent a chance to stop fighting, [¶] If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight, [¶] However, if the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting or communicate the desire to stop to the opponent, or give the opponent a chance to stop fighting, [¶] A fight is mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose.” (Italics added.)
CALCRIM No. 3472 instructs that even if initial aggressors or mutual combatants satisfy the requirements of CALCRIM No. 3471, they are not permitted to assert the right to self-defense if they initially engaged in that activity for the purpose of contriving the opportunity to engage in further violence in response to their adversary’s reaction. The majority does not give CALCRIM No. 3472’s phrase, “with the intent to create an excuse to use force,” any meaning or weight in its analysis of whether CALCRIM No. 3472 accurately states the law when it is that very phrase that distinguishes it in substance and purpose from CALCRIM No. 3471.
The majority opinion quotes extensively from the prosecutor’s closing argument and rebuttal argument, asserting the prosecutor compounded the impact of the claimed error contained in CALCRIM No. 3472 by reiterating the instruction’s misstatement of the law. (Maj. opn., ante, at pp. 946-947, 948-949.) For the reasons I have explained, CALCRIM No. 3472 contains a proper statement of the law as confirmed by Enraca and Hinshaw. The majority does not assert that the prosecutor made any objectionable statements that were inconsistent with CALCRIM No. 3472. Because there was no instructional error, analysis of the prosecutor’s statements is unnecessary to evaluate prejudice. Armando and Victor did not argue prosecutorial misconduct in this appeal.
The majority’s reliance on People v. Vasquez (2006) 136 Cal.App.4th 1176 [39 Cal.Rptr.3d 433] (Vasquez) is misplaced as that case did not involve contrived self-defense as set forth in CALCRIM No. 3472 or otherwise. The *958 appellate court in Vasquez held the trial court erred by refusing to instruct the jury on imperfect self-defense, explaining in part, “the defense is available when the victim’s use of force against the defendant is unlawful, even when the defendant set in motion the chain of events that led the victim to attack the defendant.” (Vasquez, supra, at pp. 1179-1180.) (The jury in the instant case was instructed on imperfect self-defense with both CALCRIM No. 571 and the special instruction discussed ante.)
In Vasquez, the trial court refused to instruct the jury on imperfect self-defense, in part, because the court concluded the defendant had “created the need to defend himself by luring [his victim] to the alley to confront him.” (Vasquez, supra, 136 Cal.App.4th at p. 1179.) Vasquez did not address whether the defendant set up the confrontation with his adversary “with the intent to create an excuse to use force” (CALCRIM No. 3472) because it was simply not at issue. The majority opinion states that language in Vasquez, criticizing an interpretation of self-defense as unavailable to a defendant “who ‘induces a quarrel that leads to an adversary’s attack’ ” {Vasquez, supra, at p. 1179), has “echo[ed] the words of CALCRIM No. 3472” (maj. opn., ante, at p. 951). Not so. CALCRIM No. 3472 has an additional scienter requirement, namely, an “intent to create an excuse to use force. ” (Italics added.) It does not simply focus on whether inducement of a quarrel leads to an adversary’s attack.
By relying on the holding of Vasquez, the majority appears to conflate two different issues: first, a defendant “setting] in motion the chain of events” (Vasquez, supra, 136 Cal.App.4th at p. 1180) that led to his or her adversary’s violent reaction, and second, the defendant “provok[ing] a fight or quarrel with the intent to create an excuse to use force” (CALCRIM No. 3472). These two actions are not the same. The California Supreme Court’s decision in People v. Conkling (1896) 111 Cal. 616, 626 [44 P. 314], simply addresses the first issue; consequently, the court rejected the legal principle that “the party first at fault — the one beginning the affray — absolutely forfeits to the other his right to live, to the extent at least of the difficulty which he has created.” (Italics added.)
Unlike Vasquez, in our case, the jury was instructed on imperfect self-defense in the form of CALCRIM No. 571 and the special instruction quoted ante. The appellate court in Vasquez did not address whether the defendant was precluded from the right to self-defense because he provoked a fight or quarrel with the intent to create an excuse to use force.
The majority’s reliance on the factual differences between our case and Enraca is without moment. In Enraca, the Supreme Court held the jury was properly instructed with CALJIC No. 5.55 in the context of the evidence that *959 the defendant participated in a gang fight during which he grabbed one victim by the hair, pulled his head back, and asked where he was from. (Enraca, supra, 53 Cal.4th at p. 744.) After the victim hit the defendant’s hand, the defendant fatally shot him; the defendant explained he was afraid the victim was about to shoot him with a gun the defendant had not seen. {Ibid.) The defendant thereafter shot a second victim because he feared that victim was about to grab the same gun he had not seen. {Ibid) Nothing in Enraca supports the majority’s intimation that CALCRIM No. 3472 is inapplicable unless the defendant provokes a fight or quarrel with the use of deadly force. Neither Enraca, nor any legal authority I have found, supports such a limitation of CALCRIM No. 3472. Notwithstanding Enraca’s disparate facts, the legal principles affirmed therein still control in our case. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)
I would also reject Armando’s other instructional and evidentiary challenges raised in this appeal, and affirm his conviction. Following the opinion of the California Supreme Court in People v. Chiu (2014) 59 Cal.4th 155 [172 Cal.Rptr.3d 438, 325 P.3d 972], I would reverse Victor’s first degree murder conviction and remand with the same disposition in Chiu. In Chiu, the court held that “an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles.” {Id. at pp. 158-159.)