Filed 4/9/25  P. v. Smith CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID SMITH,<br><br>    Defendant and Appellant. | B335637<br><br>(Los Angeles County<br>Super. Ct. No. VA158043) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Jason Tran and Herbert S. Tetef, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted David Smith of one count of second degree murder. Defense counsel conceded that Smith shot the victim but argued he did so in self-defense. On appeal, Smith contends there was insufficient evidence to support the jury's conviction of second degree murder because the People failed to prove beyond a reasonable doubt that he did not act in imperfect self-defense. He also asserts that the trial court erred when it did not instruct the jury, sua sponte, on voluntary manslaughter under a heat of passion theory. We reject these contentions. Finally, Smith argues that testimony from a crime analyst was improperly admitted at trial. He concedes, however, that he failed to object to the admission of the testimony. We conclude his argument is forfeited and, even if it were not, he has not established prejudice. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of March 7, 2022, at approximately 7:00 p.m., Smith and his girlfriend, Desiree Rivera, arrived at a laundromat at 2700 East Gage Avenue in Huntington Park. After starting their laundry, they walked to the nearby Gage Bargain store, arguing along the way.

Around the same time, Jose Leandro, Jr., left a nearby family gathering to purchase some items at the same store. The store was within walking distance of the gathering. As he entered Gage Bargain, Smith and Rivera were inside, still engaged in their argument. Rivera testified that Leandro "butted" into the dispute, appearing angry and aggressive. Leandro seemed to be defending Rivera. Smith told Leandro to stay out of it, emphasizing that it was not his business.

2

Smith and Rivera left the store, but Leandro followed. Surveillance video showed Leandro removing his jewelry before stepping outside. He continued speaking aggressively to Smith while in front of the store, but Rivera could not hear their conversation. Rivera testified that Smith seemed "mad."

Smith lingered by an alley before catching up with Rivera, who had headed back to the laundromat. Rivera handed him her car keys so that he could sit and "cool down." In the meantime, she went into the laundromat. Her car was parked in front. After checking on Smith later, Rivera described him as "just upset a little bit."

Meanwhile, Leandro called his fiancée, Evelyn Hernandez, and told her he needed to speak with his brother, Ulises.[1] Hernandez, Ulises, and other family members were at the family gathering. Leandro claimed that someone who had a gun had tried to rob him. He urged Ulises to come quickly. Ulises, along with Hernandez, Leandro's brother-in-law Jesus "Alex" Rios, and Leandro's sister Anel, rushed down an alley to Gage Bargain.

At the corner of the alley near the store, they encountered Smith. Anel asked Smith if there had been an "altercation" and if he had seen anything. Smith said yes, but that it happened "sometime back" and was over. Anel testified that Smith said he did not know anything and had not seen anyone. Anel left the others and returned home.

Ulises went inside Gage Bargain and found Leandro. Leandro again claimed that someone had tried to rob him, saying the person had attempted to steal his "chain and everything" and had a gun.

---

[1] We refer to members of Leandro's family who share his last name by their first names for clarity.

Leandro, Hernandez, Ulises, and Rios walked toward the laundromat together.  Ulises testified that they were heading home.  Leandro gave Hernandez his purchases and jewelry.  Leandro appeared visibly upset to both Rios and Hernandez.

As they walked, Leandro told Ulises that someone had been "talking shit to him."  Leandro then noticed Smith sitting in Rivera's car and said, "That's him."  Inside the car, Smith tilted his head up, in a nodding gesture, towards Leandro.

Leandro turned around and headed to the driver's side of the vehicle, where Smith sat.  Ulises and Rios followed.  Leandro knocked on the window and ordered Smith to " 'Get out,' " challenging, "Let's see one on one."  Smith lowered his window slightly.  Ulises and Rios were standing at the front of the car.  Ulises saw Smith moving his hand to retrieve something in the car.  Smith pulled out a gun.  Leandro reached into the car, attempting to grab the weapon.  Smith fired multiple shots, hitting Leandro three times.  He then immediately reversed and drove away.

Shortly before, Rivera had checked on Smith in the car and was walking back into the laundromat when she saw a group of people and heard one say, " 'He's right there.' "  A few minutes later, she saw gunfire coming from her car.  She saw Smith drive away.

Leandro died from the gunshot wounds.

During their investigation, law enforcement recovered surveillance footage from four nearby businesses.  A video showed Smith, Rivera, and Leandro enter and exit the Gage Bargain store.  Other footage captured Smith getting into the car, and Leandro, Ulises, and Rios approaching it.  On cross-examination, the officer describing the footage agreed with

4

defense counsel that a few seconds before Leandro approached the car, it appeared on the video that Leandro "may have something in his hand." However, no percipient witness in the case indicated Leandro had any type of weapon. No firearms, knives, or other weapons were located at the scene.

In October 2022, the People charged Smith by information with the murder of Leandro (Pen. Code, § 187, subd. (a))[2] and possession of a firearm by a felon (§ 29800, subd. (a)(1)). The information alleged that Smith personally used a weapon, a semi-automatic handgun, in the commission of the murder, within the meaning of section 12022.5, subdivision (a). He pled no contest to the charge of possession of a firearm by a felon.

Smith did not testify at trial or offer any witness testimony in his defense. During his opening statement and closing argument, defense counsel conceded that Smith shot Leandro but argued that he did so in self-defense. The court instructed the jury on justifiable homicide based on reasonable self-defense and voluntary manslaughter based on imperfect, or unreasonable, self-defense.

The jury found Smith guilty of second degree murder and found the section 12022.5, subdivision (a), firearm allegation true. The trial court sentenced Smith to 15 years to life in prison, plus four years for the firearm enhancement. The court imposed and stayed a two-year midterm sentence on the felon in possession of a firearm count.

Smith timely appealed.

---

[2] All undesignated statutory references are to the Penal Code.

## DISCUSSION

## I. Substantial Evidence Supports the Jury's Finding that Smith Did Not Act in Imperfect Self-Defense

### A. Standard of review

To determine whether the evidence is sufficient to sustain a criminal conviction, "we review the entire record in the light most favorable to the judgment of the trial court. We evaluate whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt." (*People v. Vargas* (2020) 9 Cal.5th 793, 820 (*Vargas*).) In our review, we must presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence, and we accept logical inferences the jury might have drawn from circumstantial evidence. (*People v. Baker* (2021) 10 Cal.5th 1044, 1103.) Reversal is not warranted unless it appears " ' " 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' [Citation.]" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.)

### B. Substantial evidence supported the conviction

Smith argues there is insufficient evidence to support the jury's conviction of second degree murder because the People failed to prove beyond a reasonable doubt that he did not act in imperfect self-defense. We disagree.

"Second degree murder is an unlawful killing with malice aforethought, but without the premeditation or deliberation required for first degree murder." (*In re Ferrell* (2023) 14 Cal.5th 593, 600.) " ' " 'Under the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant *actually*, but unreasonably, believed he

6

was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary manslaughter.' [Citation.]" ' [Citation.]" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1226.)

Imperfect, also known as "unreasonable" self-defense, thus "involves a misperception of objective circumstances." (*People v. Elmore* (2014) 59 Cal.4th 121, 134.) It requires " 'an honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury . . . .' . . . [I]t is most accurately characterized as an *actual* but unreasonable belief." (*Id.* at p. 134, fn. omitted.) Thus, "[i]mperfect self-defense differs from complete self-defense, which requires not only an honest but also a reasonable belief of the need to defend oneself." (*People v. Simon* (2016) 1 Cal.5th 98, 132 (*Simon*).) A defendant is not required to testify to his or her actual belief. (*People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1262.) It is "for the jury sitting as the trier of fact to decide whether appellant actually feared serious injury or death . . . ." (*People v. Vasquez* (2006) 136 Cal.App.4th 1176, 1179.)

"When imperfect self-defense is at issue, the malice element of murder requires the People to show the absence of that circumstance beyond a reasonable doubt." (*People v. Schuller* (2023) 15 Cal.5th 237, 243, citing *People v. Rios* (2000) 23 Cal.4th 450, 463.)

Viewing the evidence in the light most favorable to the judgment, the evidence at trial was sufficient to support the jury's rejection of Smith's claim of imperfect self-defense. The record lacks any evidence of Smith's actual fear of imminent death or bodily harm. (*Simon, supra*, 1 Cal.5th at pp. 133–134.)

7

He "did not testify, and there is no evidence he ever told anyone that he had acted out of fear." (*Id*. at p. 134.)

Smith argues that the evidence showed he felt the need to defend himself. Smith points to the evidence that Leandro initiated the argument in the store, called for backup, removed his jewelry in preparation for a fight, approached Smith's car, challenged him to a fight, and tried to grab his gun.

Yet, there was also evidence permitting the jury to reasonably conclude Smith acted out of anger—first at Leandro for his behavior in the store, then at being followed and challenged to a fight. Rivera testified that Smith was mad and sitting in the car to cool down. Evidence also suggested that Smith waited for Leandro in the alley before encountering Leandro's family, thus not shying away from further altercations with Leandro. When Anel asked Smith if he had seen anyone fitting Leandro's description, Smith laughed and said no. He also told her any altercation was over. Later, when Leandro approached Rivera's car, Smith engaged him by tilting his head. At that point, Smith had a firearm within his reach and Leandro did not. When Leandro knocked on the window, seeking further confrontation, Smith rolled the window down rather than taking available measures to protect himself, such as keeping the window closed. After the shooting, he immediately drove away. This evidence tended to show that Smith did not shoot Leandro because he actually feared serious injury or death.

Ultimately, to the extent the evidence, and the reasonable inferences that could be drawn from that evidence, were in conflict, it was for the jury to weigh the evidence and make credibility determinations. " ' "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not

8

warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility." [Citation.]' [Citation.]" (*People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 206.) The jury was permitted to reject Smith's theory of imperfect self-defense given the evidence of Smith's anger and the lack of any evidence that Smith believed he was in imminent danger of death or great bodily injury. (See *People v. Morales* (2021) 69 Cal.App.5th 978, 989 ["the jury was free to disbelieve Morales's claim that he was afraid and acting in self-defense, especially in light of the evidence to the contrary"].)

Viewing the evidence in the light most favorable to the judgment, we conclude a reasonable jury could have concluded beyond a reasonable doubt that Smith did not act in imperfect self-defense.

## II. The Trial Court Did Not Err in Failing to Instruct, Sua Sponte, on Voluntary Manslaughter Based on Heat of Passion

Smith also contends the trial court erred in failing to instruct the jury sua sponte on voluntary manslaughter under a heat of passion theory. He asserts there was substantial evidence to support a finding that he killed Leandro in the heat of passion due to sufficient provocation that caused him to fear for his life. We find no error.

### A. Applicable legal principles

The trial court has a duty to instruct the jury on any lesser included offenses that are supported by substantial evidence. (*People v. Westerfield* (2019) 6 Cal.5th 632, 718; *People v. Souza* (2012) 54 Cal.4th 90, 116 [even on request, court has no duty to

9

instruct on a lesser offense unless it is supported by substantial evidence].)

The " 'substantial evidence requirement is not satisfied by " '*any* evidence . . . no matter how weak,' " but rather by evidence from which a jury . . . could conclude "that the lesser offense, but not the greater, was committed." ' [Citation.]" (*People v. Nelson* (2016) 1 Cal.5th 513, 538 (*Nelson*).) "Speculative, minimal, or insubstantial evidence is insufficient to require an instruction on a lesser included offense." (*Simon*, *supra*, 1 Cal.5th at p. 132.) But any uncertainty about whether the evidence is sufficient to warrant the instruction must be resolved in favor of the defendant. (*People v. Vasquez* (2018) 30 Cal.App.5th 786, 792 (*Vasquez*).)

We independently review whether the trial court erroneously failed to instruct on a lesser included offense. (*Nelson*, *supra*, 1 Cal.5th at p. 538.) " 'In deciding whether evidence is "substantial" in this context, a court determines only its bare legal sufficiency, not its weight.' [Citation.]" (*Vasquez*, *supra*, 30 Cal.App.5th at p. 792.) We therefore do not evaluate the credibility of witnesses. (*People v. Martinez* (2024) 106 Cal.App.5th 892, 901 (*Martinez*).)

" 'Murder is the unlawful killing of a human being . . . with malice aforethought.' (§ 187, subd. (a).) 'Manslaughter is the unlawful killing of a human being without malice.' (§ 192, subd. (a).) Manslaughter is a lesser included offense of murder, and a defendant who commits an intentional and unlawful killing but who lacks malice is guilty of voluntary manslaughter. Heat of passion is one of the mental states that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter." (*Nelson*, *supra*, 1 Cal.5th at p. 538.)

10

"Heat of passion arises if, ' "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." ' [Citation.]" (*People v. Beltran* (2013) 56 Cal.4th 935, 942.) This theory has both an objective and a subjective component. To satisfy the objective component, " ' "the accused's heat of passion must be due to 'sufficient provocation.' " [Citation.]' [Citation.]" (*People v. Moye* (2009) 47 Cal.4th 537, 549 (*Moye*).) To satisfy the subjective component, "the accused must be shown to have killed while under 'the actual influence of a strong passion' induced by such provocation." (*Id*. at p. 550.)

## B.    Discussion

Here, there was no substantial evidence to support a heat of passion voluntary manslaughter instruction. The subjective component of the heat of passion theory required that at the time of the killing, Smith was actually under the influence of a strong passion.[3] (*Nelson, supra*, 1 Cal.5th at p. 539; *Martinez, supra*, 106 Cal.App.5th at p. 905.) His mental state must have been such that his "reason ' " 'was obscured or disturbed by passion' " ' to so great a degree that an ordinary person would ' " 'act rashly and without deliberation and reflection' " ' . . . ." (*Vargas, supra*, 9 Cal.5th at p. 828.)

Smith contends there was substantial evidence he acted out of great fear for his life. We disagree. Rivera's testimony offered the only direct evidence of Smith's mental state, and that testimony did not suggest Smith was in a state of fear so great

---

[3]    Because we conclude that the subjective component is not met, we need not and do not address the objective component.

11

that it obscured his reason.  Rivera testified that Smith was initially angry after the interaction at the store, but when she checked on him as he sat in her car, he was "just upset a little bit."

Other evidence similarly failed to create a reasonable inference that Smith was overcome with fear.  When faced with a group of individuals obviously associated with Leandro, Smith spoke to them, and even laughed as he denied seeing anyone matching Leandro's description.  He had gone to the car, according to Rivera, to "cool down."  When Leandro knocked on the car window, he rolled it down in response.  There was no nonspeculative evidence from which a reasonable jury could conclude Smith was experiencing an emotion so intense that he simply reacted.  (*People v. Valdez* (2004) 32 Cal.4th 73, 116.)

In *Moye*, the California Supreme Court reasoned that simply being on the defensive during an attack, with evidence the defendant killed in self-defense, is insufficient to require a heat of passion instruction.  Rather, there must be evidence that the defendant acted without due deliberation and reflection.  (*Moye*, *supra*, 47 Cal.4th at p. 553.)  Therefore, in cases involving fighting between the defendant and the victim, courts have determined a heat of passion instruction was required where there was at least some evidence of the defendant's state of mind at the time of the killing.  (See, e.g., *People v. Dominguez* (2021) 66 Cal.App.5th 163, 180 [defendant testified he " 'reacted' " while " 'super panicked' " and " 'super scared,' " his mind " 'went blank,' " he closed his eyes, and just started shooting]; *In re Hampton* (2020) 48 Cal.App.5th 463, 480 ["Scared that he would be shot, Hampton grabbed the gun, swung his arm out towards [the victim], and fired.  He did so without conscious thought and

12

was stunned when the gun discharged."]; *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1139 ["Millbrook testified that when he shot [the victim] he was 'scared' and 'panicking' . . . ."]; *People v. Thomas* (2013) 218 Cal.App.4th 630, 640 [defendant testified " 'I was afraid.  I was nervous.  I just wasn't thinking clearly' "].)

Here, because there was insufficient evidence that Smith " 'actually, subjectively, kill[ed] under the heat of passion,' " the trial court had no duty to instruct the jury on voluntary manslaughter under that theory.  (*Moye*, *supra*, 47 Cal.4th at p. 554.)

## III. Smith Forfeited His Objections to the Admission of Expert Testimony and, Even if Not Forfeited, He Failed to Establish Prejudice

### A. Background

Lizet Rosales is a crime analyst for the Los Angeles County Sheriff's Department Homicide Division.  One of her duties is to obtain cell phone records and input their data into a software program that maps the locations of the phones during a crime.  The records link a phone to a specific cell phone tower at a given time.

Rosales obtained Smith's cell phone records from the night of Leandro's murder.  She used the records and mapping software to identify the phone's locations between "approximately 5:00 p.m. to approximately 12:00 p.m. [*sic*]."  She compiled her analysis into a report that was shown to the jury.

Rosales testified that Smith's cell phone was connected to a tower in the "Florence area" at 6:57 p.m.  By 7:00 p.m., Smith's phone connected to cell towers in the vicinity of the shopping

13

center on Gage Avenue where Leandro was killed. It reconnected with a cell tower in the "Florence area" at 7:39 p.m.

Rosales further testified that a license plate reader captured Smith's car at 942 West 54th Street at an unspecified time between 7:35 p.m. and 11:59 p.m.

## B.    Discussion

Smith contends Rosales was unqualified to provide expert opinions on the mapping software's analysis and the accuracy of the cell phone data. He contends her testimony about the cell phone data and the license plate reader data lacked foundation and exceeded her qualifications, in violation of Evidence Code sections 801, 803, and 804. He also argues her testimony included inadmissible hearsay since she recited information from the cell phone provider's reports that she did not prepare. He similarly asserts Rosales's testimony about license plate reader data was inadmissible hearsay.

However, as Smith acknowledges, he forfeited these arguments by not objecting to Rosales's testimony at trial. "Ordinarily, 'the failure to object to the admission of expert testimony or hearsay at trial forfeits an appellate claim that such evidence was improperly admitted.' [Citations.]" (*People v. Perez* (2020) 9 Cal.5th 1, 7 (*Perez*); see also *People v. Dowl* (2013) 57 Cal.4th 1079, 1087 ["defendant who fails at trial to object that a witness lacks the qualifications to render an expert opinion may not on appeal contest the opinion's admissibility"]; *People v. Jennings* (2010) 50 Cal.4th 616, 654 [failure to object to admission of hearsay at trial forfeited argument on appeal]; *People v. Garlinger* (2016) 247 Cal.App.4th 1185, 1193 [failure to object to the admissibility of police detective's testimony

14

regarding cell phone locations under Evidence Code at trial forfeited testimony].)

We decline to address the merits of Smith's evidentiary objections for the first time on appeal. " ' "The reason for the [objection] requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal." ' [Citation.]" (*Perez*, *supra*, 9 Cal.5th at p. 7.)

Moreover, even if we were inclined to consider the merits of Smith's arguments for the first time on appeal, we would reject them as a basis for reversal of the judgment. The record demonstrates that even if Rosales's testimony was inadmissible, the admission of the evidence was harmless under any standard.

It was undisputed at trial that Smith was at the scene of the shooting, that he shot Leandro, and that he immediately drove away. This was established by the testimony of the witnesses who were present, including Rivera, Smith's girlfriend. Rosales's testimony was entirely duplicative of this other evidence that was admitted without objection and is not challenged on appeal. The cell phone location and license plate scanner evidence was irrelevant to the only contested issue, which was whether Smith had the mental state necessary to be convicted of murder or manslaughter. The location data evidence could not have affected the outcome of the trial in any way.

On appeal, Smith contends that Rosales's testimony allowed the People to argue that Smith immediately fled the

15

scene after shooting Leandro, suggesting consciousness of guilt. But Rivera, Hernandez, and Ulises testified to Smith's immediate departure.  There is no basis for Smith's contention that since he "did not dispute his encounters with [Leandro] at Gage Bargain or that his gun issued the fatal shots, the jury was left with the impression that the geolocation data supported the prosecution's claim of murder with scientific certainty."  There was no connection between the location data evidence and Smith's claim of self-defense and the prosecution did not attempt to draw one.  The location data evidence was offered only to establish Smith's presence at the scene and his departure, facts that were undisputed and established by several other unchallenged pieces of evidence.  It is not reasonably probable Smith would have obtained a more favorable result in the absence of Rosales's testimony.  (*People v. Watson* (1956) 46 Cal.2d 818, 837.)

The lack of any prejudice is also fatal to Smith's claim of ineffective assistance of counsel.  Even if Smith could establish his counsel's failure to object to Rosales's testimony constituted deficient performance, he cannot establish he was prejudiced. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Ledesma* (1987) 43 Cal.3d 171, 217–218.)

## DISPOSITION
The judgment is affirmed.
### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



ADAMS, J.


We concur:



EDMON, P. J.



EGERTON, J.



17