Filed 6/23/26  P. v. Urbina-Martinez CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G064521 |
| v. | (Super. Ct. No. 20NF2944) |
| ARMANDO ANDREI URBINA-MARTINEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge. Affirmed.

Mary W. Wells, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Steve Oetting and Joshua Trinh, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Armando Andrei Urbina-Martinez appeals from his conviction for second degree murder on two grounds. First, he contends there was insufficient evidence of either express or implied malice; the evidence instead showed he acted in self-defense. Second, he asserts the jury was misinstructed on implied malice because the instruction omitted a recent amendment clarifying the term "dangerous to human life."

We conclude substantial evidence showed both express and implied malice and that he did not act in self-defense. We also hold the implied malice instruction was accurate. We therefore affirm.

FACTS

Urbina-Martinez watched as an argument broke out between two groups of people in a restaurant parking lot. The two groups postured as if they were going to fight, but the dispute was resolved without any physical interaction and the parties even shook hands before separating.

Urbina-Martinez approached one group to confront them. One man, Cody Stewart, moved to the front and told Urbina-Martinez to leave, saying this was not his problem. Urbina-Martinez pushed Stewart first, and Stewart responded by punching him and knocking him to the ground. Stewart stood over him "talking shit." Urbina-Martinez then stood up, pulled a knife out of his pocket and told Stewart, "You don't want to fuck with me." Stewart punched Urbina-Martinez again, and they both fell to the ground, fighting. When the two men stood up, Stewart was clutching his bleeding stomach. Urbina-Martinez walked back to his car and drove away.

Stewart died at the hospital later that morning. The autopsy confirmed Stewart's cause of death was stab wounds to the torso and extremities. The fatal stab wound to Stewart's chest was a sharp force injury that penetrated the diaphragm, the abdominal and chest cavities, and

fractured a rib before entering the heart, and would have caused Stewart's death within less than an hour.

Urbina-Martinez was arrested the next day and charged with murder while using a dangerous and deadly weapon. (Pen. Code, §§ 187, 12022, subd. (b)(1).) [1]

Urbina-Martinez did not testify at trial but a video and transcript of his police interview was presented to the jury. He told the investigator he had gone into the restaurant alone to "cool off" after a fight with his girlfriend. He danced with some of the women there and was hoping to go home with one. He told the investigator he saw the interaction between the two groups in the parking lot and said he approached them to try to calm everyone down. He did not want anyone to call the police because he was trying to hook up with the women.

Urbina-Martinez said he did not realize he had stabbed someone until after he got home and saw his bloody knife. He did not know Stewart died until the investigator told him. When he found out, he expressed disbelief and cried. He said he did not mean to kill anyone. The investigator asked, "[w]ell you knew if you took a knife out there was a possibility you could kill somebody, right?" Urbina-Martinez responded, "yeah man, but I didn't fucking do it in that purpose."

The court instructed the jury on the applicable law, including first and second degree murder, voluntary and involuntary manslaughter, and self-defense. After deliberating for six days, the jury found Urbina-Martinez not guilty of first degree murder but guilty of second degree murder. He was sentenced to 16 years to life.

---

[1] All statutory references are to this code.

DISCUSSION

I.

SUFFICIENT EVIDENCE SUPPORTS THE JUDGMENT

*A. Substantial Evidence Showed Malice, Both Express and Implied*

Urbina-Martinez claims his second degree murder conviction must be reversed because no substantial evidence shows he stabbed Stewart with either express or implied malice. We disagree.

Murder is the unlawful killing of a human being with malice aforethought, which can be either express or implied. (§§ 187, subd. (a), 188, subd. (a)(3).) "Malice is express when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature." (§ 188, subd. (a)(1).) Malice is implied when a person deliberately performs an act which is "dangerous to life," meaning there is ""a high degree of probability"" the act will result in death. (*People v. Reyes* (2023) 14 Cal.5th 981, 989 (*Reyes*).) An actor commits murder with implied malice when he knows his act will endanger the life of another and he acts with conscious disregard for that life. (*Id.* at p. 988.)

"The test for evaluating a sufficiency of evidence claim is deferential." (*People v. Flores* (2020) 9 Cal.5th 371, 411.) We "'review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.'" (*People v. Sandoval* (2015) 62 Cal.4th 394, 423 (*Sandoval*).) "'A reviewing court neither reweighs [the] evidence nor reevaluates a witness's credibility.'" (*People v. Thomas* (2023) 14 Cal.5th 327, 378 (*Thomas*).)

Substantial evidence showed Urbina-Martinez "manifested a deliberate intention" to unlawfully kill Stewart—i.e., acted with express

4

malice. (§ 188, subd. (a)(1).) Urbina-Martinez inserted himself into the argument, approaching aggressively with a knife in his pocket. He conceded in his police interview he was angry about being hit by Stewart, who stood over him "talking shit." The jury could reasonably infer Urbina-Martinez felt embarrassed in front of the women he had hoped to impress, giving him a motive to kill. He then stabbed Stewart multiple times, plunging the knife into Stewart's chest so deeply it broke a rib and entered his heart. All of this shows a deliberate intention to kill.

The same evidence shows Urbina-Martinez endangered Stewart's life with a conscious disregard of that risk—i.e., acted with implied malice. (§ 188, subd. (a)(2).) Urbina-Martinez agreed with the detective who asked, "you knew if you took a knife out there was a possibility you could kill somebody, right?" And he stabbed the victim multiple times, showing a conscious disregard for Stewart's life.

Urbina-Martinez's contrary contentions are unavailing. He claims he couldn't have acted with malice because he didn't even know Stewart and had been drinking that night. But "[i]ll will toward, or hatred of, the victim are not prerequisites of malice." (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 103.) And voluntary intoxication cannot negate implied malice. (§ 29.4.)

Urbina-Martinez also unpersuasively reargues the evidence. He notes that he had not drawn his knife when he first approached Stewart, claims he only pulled it out of his pocket to stop the fight, and asserts Stewart initiated physical contact by punching him and knocking him to the ground. A reasonable jury could have found Urbina-Martinez escalated the confrontation to potentially lethal by drawing the knife, supporting a finding of malice. (See *Sandoval, supra,* 62 Cal.4th at p. 423 [we presume reasonably

deducible facts].) The jury could have reasonably rejected his self-serving justification for drawing the knife and credited the contrary evidence that he punched Stewart first. (See *Thomas, supra*, 14 Cal.5th at p. 378 [we "'neither reweigh[ ] [the] evidence nor reevaluate[ ] a witness's credibility'"].)

*B. Substantial Evidence Shows Urbina-Martinez Did Not Act in Self-Defense*

Urbina-Martinez contends he acted in self-defense when he stabbed Stewart, who stood 6'6," was bigger than him, and was with two friends. As he told the police, he thought Stewart and his friends were going to beat him.

"The doctrine of self-defense embraces two types: perfect and imperfect. [Citation.] Perfect self-defense requires that a defendant have an honest and reasonable belief in the need to defend himself or herself. [Citation.] 'Imperfect self-defense is the killing of another human being under the actual but unreasonable belief that the killer was in imminent danger of death or great bodily injury.'" (*People v. Rodarte* (2014) 223 Cal.App.4th 1158, 1168 (*Rodarte*).) Imperfect self-defense is "'not a true defense; rather it is a shorthand description of one form of voluntary manslaughter.'" (*People v. Schuller* (2023) 15 Cal.5th 237, 253.)

"It is the prosecution's burden to prove beyond a reasonable doubt that the defendant did not act in lawful self-defense. [Citation.] However . . . our review is for substantial evidence."[2] (*People v. Cruz-Partida* (2022) 79 Cal.App.5th 197, 212.)

---

[2] Because the jury did not find self-defense here and we review for substantial evidence supporting the judgment, Urbina-Martinez is not helped by cases discussing whether the evidence warranted self-defense jury instructions. (See *People v. Vasquez* (2006) 136 Cal.App.4th 1176, 1179.)

Here, the substantial evidence of express and implied malice sufficiently showed Urbina-Martinez did not have a subjective belief of ""imminent danger of death or great bodily injury."" (*Rodarte, supra*, 223 Cal.App.4th at p. 1168.) The jury could have reasonably rejected his claims of fear. Notably, Stewart stopped punching him after he fell to the ground. There was no imminent danger when he took the knife out of his pocket and told Stewart, "You don't want to fuck with me," which just precipitated more fighting. The jury could reasonably perceive the introduction of the knife as changing the dynamic of the confrontation, with Urbina-Martinez not afraid but emboldened.

## II.

### THE TRIAL COURT CORRECTLY INSTRUCTED THE JURY

While the court instructed the jury with the standard form instruction on murder, CALCRIM No. 520, Urbina-Martinez contends the court wrongly omitted a sentence that was added to that instruction just weeks before trial. The court instructed the jury that a defendant acts with implied malice by committing an act "dangerous to human life."

The amended version of CALCRIM No. 520 adds: "An act is *dangerous to human life* if it involved a high degree of probability that it would result in death." The amendment was based on *Reyes, supra*, 14 Cal.5th 981. (Bench Notes to CALCRIM No. 520 (2026 ed.) pp. 251–252.) The *Reyes* court held that implied malice means acting in a way that is dangerous to human life in more than "some vague or speculative sense." (*Reyes, supra*, 14 Cal.5th at p. 989.) Death does not have to be a certainty, but there must be ""a high degree of probability"" the act will result in death. (*Ibid.*)

We review claims of instructional error "'de novo and assesses whether the instruction accurately states the law.'" (*People v. Lewis* (2023) 14

7

Cal.5th 876, 900.) Even when an instruction is erroneous, "'"'reversal is required only when it appears the error was likely to have misled the jury."'"' (*People v. Parker* (2022) 13 Cal.5th 1, 66.)

Here, the instruction given by the court accurately stated the law of implied malice. A case recently confirmed that "the instruction under the former version of CALCRIM No. 520 remains a correct statement of law, notwithstanding any clarification in *Reyes*." (*People v. Pierce* (2025) 114 Cal.App.5th 508, 536.) Courts have long held that the standards "'dangerous to life'" and "'high degree of probability that it will result in death'" are "'one and the same standard.'" (*Id.* at p. 525.) *Reyes* simply "clarified" existing law. (*Id.* at p. 527.) Despite Urbina-Martinez's urging to the contrary, we find *Pierce* persuasive and follow it.[3]

---

[3] Though Urbina-Martinez did not object to the instruction at trial, we address his claim because omitting an element of implied malice murder would affect his substantial rights. (See *Thomas*, *supra*, 14 Cal.5th 327, 382.) Because the jury instruction was legally accurate, however, we need not consider his ineffective assistance contention.

DISPOSITION

The judgment is affirmed.


SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.